LOWER COLORADO RIVER AUTHORITY v. WILLIAM McCRAW, ATTORNEY GENERAL.

No. 6915. Decided May 22, 1935.
(83 S. W., 2d Series, 629.)

*Powell, Wirtz, Rauhut & Gideon,* of Austin, for relator.

The act creating the Lower Colorado River Authority is not unconstitutional. Fidelity B. & L. Assn. v. Thompson, 51 S. W. (2d) 578; Penick v. Foster, 129 Ga., 217, 12 L. R. A. (N. S.) 1159; City of Dallas v. Atkins, 197 S. W., 593; City of Uvalde v. Uvalde Elec. & Ice Co., 250 S. W., 140; Omaha Water Co. v. City of Omaha, 147 Fed., 1; Lytle v. Halff, 75 Texas, 128; Dallas County Levee Dist. v. Looney, 109 Texas, 331, 207 S. W., 310, 12 C. J., 852.

*Wm. McCraw,* Attorney General, and *William C. Davis,* Assistant Attorney General, for respondent.

*White, Taylor & Gardner,* of Austin, *Geo. D. Anderson,* of Beaumont, and *Clarence R. Wharton,* of Houston filed arguments as amici curiae.

MR. JUSTICE CRITZ delivered the opinion of the court.

This is an original mandamus proceeding, filed in this Court by Lower Colorado River Authority, as relator, against William McCraw, Attorney General of Texas, as respondent, to compel him to approve $100,000.00 of the bonds of relator.

Relator was created a conservation and reclamation district, and as a governmental agency and body politic and corporate under and by virtue of Chapter 7, Acts Fourth Called Session 43rd Legislature, page 19, et seq. The Act in question confers upon relator the right to sue and be sued in its corporate name. Also, it appears that the above Act has been amended by the 44th Legislature so as to authorize relator to issue $20,000,-000.00 of its bonds, instead of $10,000,000.00, as provided by the original Act. Such amendment, however, in nowise affects the issues of this case.

Under the Act creating this District it was given power and authority to issue bonds for any corporate purpose not exceeding $10,000,000.00 (now $20,000,000.00). The Act expressly provides that such bonds shall be payable solely out of the revenues to be derived by the District in respect of its properties, and that the credit of the State shall never be pledged, nor shall any tax ever be levied by the District, for the payment of such bonds, or for any other purpose.

The Act further provides that before any of the bonds of this District shall ever be sold, a certified copy of the proceedings in the issuance thereof shall be submitted to the Attorney General of this State; and if he shall find that they have been issued in accordance with law, he shall approve the same and issue his certificate to that effect.

After the above Act became effective, the District issued its bonds in the amount of $100,000.00. All proceedings with reference to the issuance of such bonds were regular and in full conformity with the above Act. In fact, it is admitted by the respondent that this mandamus should issue, unless it is held that the bonds here involved are invalid or illegal, on account of one or more of the matters involved in the following four objections:

"1. Sub-section (c) of Sec. 59 of Art. XVI of the Constitution makes it mandatory upon the Legislature to confer the power of taxation upon all districts created under said Section 59. The Act creating the Authority expressly denies this power to the Authority; this would place the provisions of the Act in direct conflict with the mandate of the Constitution and would probably render invalid the organization of the Authority.

"2. Said sub-section (c) further provides that 'the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted.' While it is conceded that revenue bonds do not constitute indebtedness in Texas, this section refers to both bonds and indebtedness, and it cannot be contended that revenue bonds are not bonds in the ordinary sense of the term. As they are bonds within the meaning of said sub-section (c), an election would be necessary to authorize the issuance of the bonds.

"3. Section 30 of Art. XVI limits the duration of public office to two years. Section 30a permits the creation of certain boards with a tenure of six years. It is doubtful that the Authority is such a board as to justify the six-year term conferred upon its members.

"4. Section 56 of Art. III of the Constitution prohibits the Legislature from passing special or local laws exempting property from taxation. Section 16 of the Act purports to exempt the bonds of the Authority from taxation. This is a special law (so far as it attempts to do so) and this provision, in my opinion, is unconstitutional."

An examination of objections 1 and 2, supra, shows that they are founded on the theory that the Act creating this District and authorizing the issuance of these bonds is unconstitutional and void, because in contravention of certain portions of Section 59 of Article XVI of our State Constitution, known as the "Conservation Amendment." We deem it expedient to here quote such constitutional provision in full. It is as follows:

"Sec. 59a. The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its over-flowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

"(b)   There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.

"(c)   The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as amy (may) be prescribed by law and shall also, authorize the levy and collection within such district of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted. (Sec. 59, Art. 16, adopted election August 21, 1917; proclamation October 2, 1917)."

It will be noted that the above constitutional provision appears as Sec. 59a. It, however, is apparent that the intention was to add Sec. 59, with three lettered sub-sections,—(a), (b), and (c). In this opinion we so treat the matter.

If we understand and properly interpret objection No. 1, supra, it is founded on the theory that the various provisions of Section 59 of Article XVI, supra, make it mandatory upon the Legislature to confer the taxing power upon all conservation and reclamation districts created thereunder. In our opinion, such constitutional provision is not susceptible of such a construction.

1   It is the rule of constitutional construction as applied to state constitutions that an Act is valid unless the constitution by express terms, or by necessary implication, prohibits the Legislature from doing what it has attempted to do in the passage of the Act. In other words, an Act of a State Legisla-

ture must be held valid unless some superior law in express terms, or by necessary implication, prohibits its passage. Lytle v. Halff, 75 Texas, 128. It follows from the rule announced. that this law does not violate Section 59 of Article XVI of our Constitution in the respect under consideration, unless it can be said that such constitutional provision contains language that expressly, or by necessary implication, requires conservation and reclamation districts organized by authority thereof to have the taxing power.

A reading of Sub-section (a) discloses that it is very broad and comprehensive in its scope. It declares that the conservation and development of all natural resources of the State are public rights and duties. This Sub-section then so comprehensively enumerates such natural resources as to include within the term every natural resource of the State. Finally, Sub-section (a) makes it the duty of the Legislature to pass all laws that are appropriate to conserve and develop such natural resources.

A reading of Sub-section (b) discloses that it is equally as broad and comprehensive as Sub-section (a). Under its terms and provisions the Legislature has the power to divide the State into such number of conservation and reclamation districts as it may determine are essential or necessary to accomplish the purposes of the Conservation Amendment. Also, Sub-section (b) expressly declares that such districts shall be governmental agencies and bodies politic and corporate. Finally, Sub-section (b) expressly provides that conservation and reclamation districts organized under Section 59, supra, shall have such powers of government, and the right to exercise such rights, privileges, and functions concerning the subject matter of such Amendment, as may be conferred by law.

2 A reading of Sub-section (c), supra, discloses that the subject of taxation is mentioned for the first time therein. A careful study of this Sub-section convinces us that it contains no language that ought to be construed as compelling the Legislature to confer the taxing power on conservation and reclamation districts organized under Section 59, supra. Sub-section (c) simply provides that the Legislature shall authorize such indebtedness "*as may be necessary*," etc., and such indebtedness "*may be evidenced by bonds*," etc., issued under such regulations "*as may be prescribed by law*." This Sub-section then provides that the Legislature shall authorize the levy and collection by such districts of all taxes equitably distributed "*as may be necessary*" for the payment of the principal and interest of such

274

bonds, etc. Finally, it is provided that the district shall not have authority to issue bonds or incur indebtedness unless the proposition shall first be submitted to the qualified tax-paying voters of the district. A reading of Sub-section (c), supra, clearly demonstrates that it simply provides that the Legislature shall have the power to determine and decide whether a particular district shall incur indebtedness and issue bonds to be serviced by a tax. It certainly contains no words that indicate a purpose to compel all conservation and reclamation districts to have the taxing power. With reference to bonds, it simply provides that the Legislature shall authorize such indebtedness *"as may be necessary,"* etc., and that such indebtedness *"may be evidenced by bonds,"* etc. In this particular it is intended that bonds representing an indebtedness of the district shall be serviced by a tax. Bonds payable only out of revenues, and that can never become a charge otherwise against the district, do not constitute an indebtedness within the meaning of Sub-section (c), supra. City of Dayton v. Allred (Commission of Appeals opinion adopted), 123 Texas, 60, 68 S. W. (2d) 172, and authorities there cited; City of Houston v. Allred (Commission of Appeals opinion adopted), 123 Texas, 334, 71 S. W. (2d) 251. In the City of Dayton Case, supra, it was held that bonds issued by a city, secured only by a lien on a public utility and its franchise and income, was not a debt within the meaning of Sections 5 and 7 of Article XI of our State Constitution. The opinion in the City of Houston Case, supra, is to the same effect. By the same course of reasoning it must be held that bonds issued by a conservation district such as this, payable solely out of the revenues thereof, and which can never become a claim against the district otherwise, do not constitute an indebtedness of such district within the meaning of Sub-section (c) of Section 59 of Article XVI of our State Constitution. Finally, on the question above discussed, when Sub-section (c) supra, is read in conjunction with the two preceding sub-sections, the conclusion we have reached becomes the more apparent.

3 As to objection No. 1, we hold that there is nothing in Section 59 of Article XVI of our State Constitution which prohibits our Legislature from creating the conservation and reclamation districts therein provided for without the taxing power. We further hold that these bonds do not constitute an indebtedness of such district within the meaning of Sub-section (c) of such Section 59. We further hold that there is nothing in such Section 59 to deny the Legislature the power to authorize the

issuance of bonds payable solely out of the revenues of districts created thereunder.

Objection No. 2 urged by respondent is to the effect that these bonds are illegal and unconstitutional because they were issued without a vote of the qualified tax-paying voters of the district, in violation of Sub-section (c) of Section 59, supra. We overrule this objection. We think what we have already said probably disposes of this objection. In this connection, it is true that the last clause of Sub-section (c) provides that the Legislature shall not authorize districts organized under Section 59 to issue bonds, or provide for any indebtedness against such districts, unless the proposition shall first be authorized by the qualified property tax-paying voters of the district; but it is clear from a reading of the whole sub-section that the bonds and indebtedness referred to are bonds and indebtedness to be paid out of tax funds. As already said, bonds payable out of revenues are not indebtednesses. It was the evident intention of this constitutional provision to only require a vote in instances where it is proposed to issue bonds or to authorize a debt payable out of tax funds.

4  Section 3 of this Act provides for a board of nine directors, all of whom shall be residents and freehold property taxpayers in the State of Texas; provided that not more than two of them shall reside in the same county. This section of the Act also provides that three of these directors shall be appointed by the Governor, three by the Attorney General, and three by the Land Commissioner. This section further provides that of the three directors first appointed by each authority, one shall be appointed for a term expiring January 1, 1937; one for a term expiring January 1, 1939; and one for a term expiring January 1, 1941. It is then provided that at the expiration of the term of any director, another director shall be appointed by the same authority which appointed the director whose term has expired. It is finally provided that each director shall hold office until the expiration of the term for which he was appointed, and thereafter until his successor shall have been appointed and qualified, unless sooner removed, etc. It is thus seen that the Act provides for a term of six years for directors after the terms of the members of the first board have expired.

Objection No. 3 filed by the respondent is to the effect that this Act is unconstitutional and void because the provision for a six-year term of office for the members of the board of directors of this district is in violation of Section 30 of Article XVI of our State Constitution. That constitutional provision stipu-

lates that the duration of all offices not fixed by the Constitution shall never exceed two years. The section excepts the members of the Railroad Commission.

It is our opinion that the length of the terms of office of the directors of this district is not controlled by Section 30 of Article XVI, supra, but by Section 30a of the same Article. That section reads as follows:

"Sec. 30a. The Legislature may provide by law that the members of the Board of Regents of the State University and boards of trustees or managers of the educational, eleemosynary, and penal institutions of the State, and such boards as have been, or may hereafter be established by law, may hold their respective offices for the term of six (6) years, one-third of the members of such boards to be elected or appointed every two (2) years in such manner as the Legislature may determine; vacancies in such offices to be filled as may be provided by law, (") and the Legislature shall enact suitable laws to give effect to this section. (Sec. 30a, Art. 16, adopted election Nov. 5, 1912, proclamation, Dec. 30, 1912)."

It will be noted that the constitutional provision just quoted stipulates that "The Legislature may provide by law that the members of the Board of Regents of the State University * * * and such boards as have been, or may hereafter be established by law, may hold their respective offices for the term of six (6) years. * * *" It is settled that this constitutional provision refers to State boards. San Antonio Independent School District v. State (writ refused), 173 S. W., 525. It follows that unless the board of directors of this District can be classed as a State board, the entire Act must fall, because the District would be left without a governing body.

An examination of this Act discloses that it does not provide for the election of the directors by the District. It does not even provide that the members of the board shall be residents of the District. It does provide that they shall be residents and freehold property taxpayers in the State of Texas. (Section 3 of the instant Act). The Act does not confine the jurisdiction of this board to the territorial limits of the District, but gives it the power to develop and generate water power and electric energy, and to distribute and sell the same within and without the boundaries of the district. The Act further gives the board power and jurisdiction to prevent or aid in the prevention of damage to person or property from the waters of the Colorado River and its tributaries; to forest and reforest, and to aid in the foresting and reforesting of the watershed

area of such river and its tributaries; to acquire, hold, and operate property within and without the boundaries of the district; to acquire property by condemnation, within and without the district; to overflow and inundate public lands of the State; and generally to carry out and perform the purposes set forth in Sub-section (a) of Section 59 of Article XVI of our Constitution, known as the "Conservation Amendment."

In connection with the above, we deem it expedient to here quote from Section 2 of the legislative Act under consideration:

"Sec. 2.  Except as expressly limited by this Act, the District shall have and is hereby authorized to exercise all powers, rights, privileges and functions conferred by General Law upon any District or Districts created pursuant to Section 59 of Article 16 of the Constitution of the State of Texas.  Without limitation of the generality of the foregoing, the District shall have and is hereby authorized to exercise the following powers, rights, privileges and functions:

"(a) to control, store and preserve, within the boundaries of the District, the waters of the Colorado River and its tributaries for any useful purpose, and to use, distribute and sell the same, within the boundaries of the District, for any such purpose;

"(b) to develop and generate water power and electric energy within the boundaries of the District and to distribute and sell water power and electric energy, within or without the boundaries of the Districts;

"(c) to prevent or aid in the prevention of damage to person or property from the waters of the Colorado River and its tributaries;

"(d) to forest and reforest and to aid in the foresting and reforesting of the watershed area of the Colorado River and its tributaries and to prevent and to aid in the prevention of soil erosion and floods within said watershed area;

"(e) to acquire by purchase, lease, gift or in any other manner (otherwise than by condemnation) and to maintain, use and operate any and all property of any kind, real, personal or mixed, or any interest therein, within or without the boundaries of the District, necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act;

"(f) to acquire by condemnation any and all property of any kind, real, personal or mixed, or any interest therein, within or without the boundaries of the District (other than such property or any interest therein without the boundaries of the Dis-

trict as may at the time be owned by any body politic) necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act, in the manner provided by General Law with respect to condemnation or, at the option of the District, in the manner provided by the statutes relative to condemnation by Districts organized under General Law pursuant to Section 59 of Article 16 of the Constitution of the State of Texas;

"(g) Subject to the provisions of this Act from time to time sell or otherwise dispose of any property of any kind, real, personal or mixed, or any interest therein, which shall not be necessary to the carrying on of the business of the District;

"(h) to overflow and inundate any public lands and public property and to require the relocation of roads and highways in the manner and to the extent permitted to Districts organized under General Law pursuant to Section 59 of Article 16 of the Constitution of the State of Texas;

"(i) to construct, extend, improve, maintain and reconstruct, to cause to be constructed, extended, improved, maintained and reconstructed, and to use and operate, any and all facilities of any kind, necessary or convenient to the exercise of such powers, rights, privileges and functions;

"(j) to sue and be sued in its corporate name;

"(k) to adopt, use and alter a corporate seal;

"(l) to make by-laws for the management and regulation of its affairs;

"(m) to appoint officers, agents and employees, to prescribe their duties and to fix their compensation;

"(n) to make contracts and to execute instruments necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act;

"(o) to borrow money for its corporate purposes and, without limitation of the generality of the foregoing, to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America, and, in connection with any such loan or grant, to enter into such agreements as the United States of America or such corporation or agency may require; and to make and issue its negotiable bonds for moneys borrowed, in the manner and to the extent provided in Section 10. Nothing in this Act shall authorize the issuance of any bonds, notes or other evidences of indebtedness of the District, except as specifically provided in this Act, and no issuance of bonds, notes or other evidences of indebtedness of the District, except as

specifically provided in this Act, shall ever be authorized except by an Act of the Legislature;

"(p) to do any and all other acts or things necessary or convenient to the exercise of the powers, rights, privileges or functions conferred upon it by this Act or any other Act or law."

As pointed out by the late Judge Fly, speaking for the San Antonio Court of Civil Appeals, in San Antonio Independent School District v. The State, supra, it was the purpose of the Legislature in proposing, and of the people in adopting, Section 30a of Article XVI, supra, of our State Constitution, to remove, as far as possible, State boards from political domination. Before the adoption of this provision, State boards often changed entirely with each change in administration,—greatly to the detriment of our State institutions. In providing for this board the Legislature evidently had these matters in mind. It so constructed this District as to make it a State governmental agency within the meaning of Sub-section (b) of Section 59, supra. This board is selected from the State at large, and has many duties that are coextensive with the limits of the State. In our opinion, it is such a board as is contemplated by Section 30a of Article XVI of our State Constitution. Objection No. 3 is therefore overruled.

Section 16 of the instant Act provides:

"Sec. 16. All bonds and the interest thereon issued pursuant to the provisions of this Act shall be exempt from taxation (except inheritance taxes) by the State of Texas or by any municipal corporation, county or other political subdivision or taxing district of the State."

Objection No. 4, supra, is to the effect that Section 16, supra, is unconstitutional and void because it violates Section 56 of Article III of our State Constitution. That constitutional provision, in so far as applicable here, is to the effect that the Legislature shall not, except as otherwise provided in the Constitution, pass any local or special law authorizing certain acts set forth in the section.

5 In our opinion, Section 16 of this Act is not violative of the provision of the Constitution just cited. In the first place, it is settled that a statute is not local or special, within the meaning of this constitutional provision, even though its enforcement is confined to a restricted area, if persons or things throughout the State are affected thereby, or if it operates upon a subject that the people at large are interested in. Stephensen v. Wood, 119 Texas, 564, 34 S. W. (2d) 246. An examination of this Act

convinces us that it operates upon a subject that the State at large is interested in. In fact, the business and operation of this District is not restricted to a particular area.

6 Even should it be held that these bonds would be subject to taxation in this State, in the absence of the above statutory provision exempting them,—a question we do not decide,—still we find nothing in our Constitution which would deny the Legislature the power to exempt them from taxation. In this regard it is generally held that, notwithstanding a constitutional prohibition against exempting all property from taxation, except such as is named in the Constitution, still the Legislature can exempt from taxation State bonds and bonds of State agencies issued in their governmental capacities, because such bonds are instrumentalities of government, and not property within the meaning of the above mentioned constitutional prohibition. 61 C. J., p. 425, §465, and notes; In re Assessment of First Natl. Bank of Chickasha, 58 Okla., 508, 160 Pac., 469, 1917B, L. R. A., 294, and notes; Miller v. Wilson, 60 Ga., 505; Penick v. Foster, 129 Ga., 217, 12 L. R. A. (N. S.), 1159, and notes.

7 What we have said disposes of the objections to the approval of these bonds advanced by the respondent. We, however, have before us a very able amicus curiae brief filed by Honorable Clarence R. Wharton, a distinguished attorney of this State, residing at Houston, Texas. In such brief it is contended that these bonds are illegal and invalid for certain reasons not advanced by the respondent, as well as for the reasons advanced by respondent. It is a well established rule in this State that in a mandamus proceeding against a public official, as such, if there are any grounds upon which the petition for mandamus should be denied, the Court will not issue the writ, and that even though the respondent official fails to present such grounds. Arberry v. Bevers, 6 Texas, 474, 55 Am. Dec., 791; Munson v. Terrell, 101 Texas, 220, 105 S. W., 1114. This should be the rule, because public rights and property should not be lost merely because a public official fails to assert them in answer to the mandamus petition.

8 The first objection to the approval of these bonds contained in Mr. Wharton's brief is as follows:

"The Lower Colorado River Authority Act is unconstitutional and void, in that it attempts to delegate to the district, and to its board of directors, and through them to the United States of America, or to any corporation or agency which the United States might create or designate, the legislative power

conferred by the Constitution of the State on the Legislature of this State; and to relinquish to said district, and through it to the United States of America, or to any corporation or agency created or designated by it, the sovereign power of this State with respect to the public rights and duties pertaining to the waters of the Colorado River, declared to exist in Section 59, Article 16, of the Constitution; and to incapacitate itself to pass such laws as might become necessary to protect and preserve such rights, and to discharge such duty, and to deny to the citizens of this State, and, particularly, to those living within the jurisdictional limits of said district, and, more especially, those owning properties affected, and to be affected, by the proper control, storing, preservation and distribution of the storm and flood waters of the Colorado River, rights guaranteed and secured to them by the Constitution and laws of this State."

Simply stated, we interpret the above objection to amount to the contention that this Act is void because it attempts to delegate legislative power to this District, and relinquishes to it, and through it to the Federal Government, the sovereign rights and powers of this State. In this connection, it may be said that Subdivision (o) of Section 2 and Sections 8, 10, and 12 of this Act are particularly pointed out as thus offending. We have already quoted Section 2 of this Act, so far as applicable here. We think that a reading of the whole of this section, and especially Subdivision (o) thereof, will clearly disclose that it was not the intention of the Legislature to give this District unlimited authority to enter into contracts with the Federal Government or its agencies. In this connection, we construe this statute as merely authorizing the District to enter into such agreements with reference to the payment of the bonds issued under the Act as may be required. In other words, the District, by the terms of this Act, has the same authority to deal with the Federal Government and its agencies, as it has to deal with individuals. A reading of the entire Act, and particularly Subdivision (o) of Section 2 and Section 12, convinces us that this Act does not relinquish the sovereign rights of the State. It merely authorizes this District to enter into contracts with the United States and its agencies with respect to the payment of the bonds hereinabove described, and in respect to labor and materials and other related matters.

Section 8 of the instant Act reads as follows:

"Sec. 8. The Board shall establish and collect rates and

other charges for the sale or use of water, water connections, power, electric energy or other services sold, furnished, or supplied by the District which fees and charges shall be reasonable and nondiscriminatory and sufficient to produce revenues adequate:

"(a) to pay all expenses necessary to the operation and maintenance of the properties and facilities of the District;

"(b) to pay the interest on and principal of all bonds issued under this Act when and as the same shall become due and payable;

"(c) to pay all sinking fund and/or reserve fund payments agreed to be made in respect of any such bonds, and payable out of such revenues, when and as the same shall become due and payable; and

"(d) to fulfill the terms of any agreements made with the holders of such bonds and/or with any person in their behalf.

"Out of the revenues which may be received in excess of those required for the purposes specified in subparagraphs (a), (b), (c) and (d) above, the Board may in its discretion establish a reasonable depreciation and emergency fund, or retire (by purchase and cancellation or redemption) bonds issued under this Act, or apply the same to any corporate purpose.

"It is the intention of this Act that the rates and charges of the District shall not be in excess of what may be necessary to fulfill the obligations imposed upon it by this Act. Nothing herein shall be construed as depriving the State of Texas of its power to regulate and control fees and/or charges to be collected for the use of water, water connections, power, electric energy, or other service, provided that the State of Texas does hereby pledge to and agree with the purchasers and successive holders of the bonds issued hereunder that the State will not limit or alter the power hereby vested in the District to establish and collect such fees and charges as will produce revenues sufficient to pay the items specified in subparagraphs (a), (b), (c) and (d) of this Section 8, or in any way to impair the rights or remedies of the holders of the bonds, or of any person in their behalf, until the bonds, together with the interest thereon, with interest on unpaid installments of interest and all costs and expenses in connection with any action or proceedings by or on behalf of the bondholders and all other obligations of the District in connection with such bonds are fully met and discharged."

9 It seems to be contended by Mr. Wharton that the above

quoted section of this Act is unconstitutional and void because it authorizes the Board of Directors of this District to establish and collect rates which shall be reasonable and nondiscrimnatory, and sufficient to produce adequate revenues for the purposes named; and binds the State not to revoke such power as long as the obligations of the District are outstanding. It is contended that such legislation is a delegation and surrender of legislative power. This objection is overruled. Under Subsection (b) of Section 59, supra, this District is a governmental agency, and the Legislature had the right to clothe it with the powers set out in Section 8 of this Act. It is well established in this State that the Legislature may, by express words, authorize municipal corporations to enter into contracts, prescribing the rates that may be charged by public utility corporations for a definite time. City of Uvalde v. Uvalde Electric & Ice Co. (Com. App.), 250 S. W., 140, and numerous authorities there cited. Of course, such right does not exist unless the legislative authority therefor is clear and unmistakable. Id. Under this rule the Legislature had the right to confer on this District authority to fix adequate rates to accomplish the purposes set forth in Section 8 of the Act; and, further, the Legislature had the power to guarantee the continuation of such rates as long as the lawful obligations of the District are outstanding. If this were not so, bonds of the District, based on income, would be idle and vain things.

We have read and carefully considered all the objections to the approval of these bonds set forth in Mr. Wharton's brief. In our opinion, those not particularly here discussed are in effect disposed of in our discussion of the objections advanced by the respondent. No good purpose would be served by further discussion here.

Before closing we think it fair to say that the Attorney General of this State has made it clear to this Court that he did not refuse to approve these bonds because he or any of his assistants believed them to be illegal, but only because the Federal agency to whom this District hopes to sell them doubted their legality on account of the matters set forth in his answer.

The mandamus will issue as prayed for by the relator.

Opinion delivered May 22, 1935.