**BORRON et al. v. EL PASO NAT. BANK OF EL PASO et al.**

No. 10372.

Circuit Court of Appeals, Fifth Circuit.

Feb. 10, 1943.

---

[3] Register of Wills Act of 1917, § 3, 20 P.S.Pa. § 1861.

[4] Orphans' Court Act of 1917, § 9, 20 P.S.Pa. § 2244.

700

Robert L. Holliday, of El Paso, Tex., and William L. Kerr, of Pecos, Tex., for appellants.

Richard F. Burges, of El Paso, Tex., for appellees.

Before SIBLEY and HUTCHESON, Circuit Judges, and DAWKINS, District Judge.

SIBLEY, Circuit Judge.

Pursuant to Texas Constitution Art. 16, § 59, Vernon's Ann.St. the Legislature has authorized the organization of public corporations for the conservation of water, called Water Power Control Districts. Vernon's Civil Statutes, Art. 7807d, § 5. The Water Power Control Districts are governed by a Board of Directors, who are chosen at a public election for a term of two years each, who take an oath of office, and give an official bond. §§ 7, 8, 9, 10. The district is divided into divisions, and the directors apportion the share of water for each. §§ 15, 16. The directors make contracts, create debts, issue bonds, establish water rates, and generally manage the business of the District. Section 20 reads: "Water Power Control Districts may borrow money for any authorized purpose and may fix, give and grant a lien and/or a mortgage upon any property owned or to be bought, constructed, or acquired by it and upon its income, revenue, and rights then existing or thereafter to be fixed or acquired * * *." Section 21 specifically provides for borrowing money from any agency created by the United States, for stated times and at a stated rate of interest. Section 21-a and 21-b, provides that a district may issue bonds and may mortgage any property, revenue or income owned by it or accruing to it to secure payment, in addition to taxes levied therefor. An amendatory Act, Art. 7807 dd, § 5, further authorizes borrowing from any agency of the United States and the securing of the loan by contracts in accordance with the rules, practice and laws creating such agency and the rules and regulations properly established for the government of the same, and the making of grants and loans by such agency.

The Red Bluff Water Power Control District was organized under the above statutes, and by its directors, after an election and approval by the Attorney General, borrowed funds from an agency of the United States to build a reservoir and electric power plant, by selling the agency $2,050,000 of bonds, supported by a tax levy and secured by a deed of trust on the property to be acquired executed to El Paso National Bank as trustee, dated May 1, 1934. There was also a "Master Contract" between the Red Bluff Water Power Control District and seven included Water Improvement Districts, which was assigned as additional security. The trust deed covered the reservoir and power plant and appurtenances, and the master contract controlled much of the non-tax revenues. Defaults were defined in the trust deed and on the occurrence of default a power was given the trustee to take possession of and operate the trust estate, and to foreclose, or to sell at public sale; funds realized to go to pay the bonds, and the surplus to the District.

Defaults occurred over several years and in January, 1940, Reconstruction Finance Corporation, the holder of all the outstanding bonds, in writing called on El Paso National Bank, the trustee in the deed of trust, to take possession of the trust property, and the Bank called on the directors of the District to surrender possession. The directors, after some resistance, on Jan. 11, 1940, resolved that "Said Board does hereby voluntarily surrender the possession of such properties to the trustee at this time." The Bank has since been in possession operating the properties; with the co-operation of the directors at first. But on Sept. 23, 1940, by resolution, the directors moved their office from El Paso to Barstow, a town in the District, and ordered that the records of its secretary and of the assessor and collector of taxes be kept there; they named a bank in Pecos to be depository of the tax funds until by proper proceedings a permanent depository could be named; the office of deputy assessor and collector of taxes, previously created by them, was abolished; a peace officer previously named by them to police especially amusement grounds covered by the trust deed was discharged; and the employment of certain attorneys to enforce taxes was revoked. All this was of inconvenience to the El Paso National Bank; and further the directors, especially one who was not a member of the Board when the deed of trust was made, denied its validity, asserting it had not been authorized by a due election, nor approved by the Attorney General, and even that the statutes relied on to sustain it are

unconstitutional; that the directors could not abdicate their public functions, and were in duty bound to control the taxes and the water rates and to manage the properties of the District. The El Paso National Bank as trustee, and Reconstruction Finance Corporation then brought this complaint in the District Court as a suit arising under the Constitution and laws of the United States, against the directors individually and as such directors, but not naming the District as a party, and prayed injunction against their carrying out the things proposed in the resolution of Sept. 23; against their interfering with the Bank in its possession and management of the property, or its collection of the revenues, including taxes; and compelling all monies of the District and all its records to be turned over to the Bank and its agents. The elaborate answers need not be stated. They set up the contentions above indicated, and as alternative relief pray for the appointment of a receiver. A socalled supplemental complaint, which was really an amendment, attacked the motives of the directors, set out specific covenants of the trust deed which they were violating, and asked a declaration that the deed is valid and binding, and a mandatory injunction enforcing its covenants. The facts were mainly stipulated. A decree was rendered in favor of the complainant, granting all the relief that was prayed. The directors appeal.

The validity of the bonds is not contested. The deed of trust only is assailed. We think no ground of the attack on it can be supported. The statutes which authorize the issuance of the bonds and the support of them both by taxation and a mortgage or lien on the income from the properties of the District, and on the properties themselves, have been heretofore referred to. A trust deed to secure a debt is only a mortgage or lien in Texas. The statute requiring an election when a loan is to be made from an agency of the United States, such as Reconstruction Finance Corporation, and approval of the proceedings by the Attorney General was fully complied with. As we read the record the issuing of the bonds and the levy of taxes and the making of the securing mortgage were submitted to the voters as a single proposition, which was duly carried.

The attack on the constitutionality of the statutes authorizing the lien is based on the fact that Art. 16, § 59, of the Constitution which authorizes the creation of conservation districts, empowers the Legislature to authorize indebtedness "Evidenced by bonds of such [district], to be issued under such regulations as may be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment * * * and such indebtedness shall be a lien upon the property assessed for the payment thereof." An election also is required before bonds shall be issued. We agree with appellants that "the property assessed for the payment thereof" means not the property of the district itself, but the property within the district belonging to individuals against which taxes are assessed to pay the indebtedness, so that the Constitution does not by these words fix any lien upon the district's property to secure its bonds. But it does not prohibit the Legislature from authorizing a district to secure its bonds by a mortgage. It expressly permits the Legislature to authorize bonds "under such regulations as may be prescribed by law", and certainly a Legislature may ordinarily enable any of its creatures to borrow money on the security of the property to be acquired by the loan, though for public use. The general legislative power on this very point is held to extend to all that the Constitution does not forbid. Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629. The property here mortgaged, while of great public interest, is really a public utility, a plant to furnish to the public water and electricity, which the Legislature could have authorized private individuals or corporations to create and operate. There is no inherent impropriety in authorizing its sale under a mortgage. We hold the statutes authorizing a mortgage or lien on the property of a district to secure its bonds, in addition to taxes laid for their payment, to be constitutional.

The Constitution requires an election by the voters to authorize bonds payable out of taxes, but not if the bonds are payable solely out of property revenues. Lower Colorado River Authority v. McCraw, supra. The bonds in controversy, being payable out of taxes and revenues, the issuance of them had to be submitted to the voters. The election held it is admitted authorized the bonds, the

contention being that the mortgage was not voted. The amendatory statute under which this loan was obtained from an agency of the United States, Vernon's Annotated Texas Civil Statutes, Art. 7807 dd, § 5, provides that before "the obligations to be issued thereunder are binding as a lien or charge against the properties in such District, the proposition for the issuance thereof shall be submitted in an election," etc. We have doubt whether "the properties *in* such District" refers to mortgaged property of the District, or as in the Constitution, to private property *in* the District which may be assessed to pay the obligations voted on: that is to say, whether the election relates to a mortgage at all. A mortgage is not otherwise mentioned in this Section, and no election is mentioned in Sections 20 and 21 of Art. 7807d which authorize generally the District to mortgage its property. If we make the assumption that the provision quoted requires an authorizing election whenever a mortgage is given to an agency of the United States, though not when given to anyone else, then such an election was had and carried here. The proposition submitted to the voters was a single one, comprised in one question, whether described bonds should be issued and taxes levied to pay them, and they be additionally secured by a mortgage on the property to be acquired, and by a pledge of all revenues therefrom. The stipulation is that "220 voted in favor of and one against the issuance of the bonds *in conformity with the question submitted.*" That means the entire question was carried in the election, and the bonds were authorized with taxation, and also a mortgage of property and pledge of revenues, as proposed.

Section 6 of Art. 7807dd requires that the proceedings of the organization of the District, the election, and the directors' order providing for the obligation shall go to the Attorney General for approval and registration in the office of the Comptroller of Public Accounts, and if not attacked by suit filed before registration, the obligation is to be binding except for fraud. This was done here. No suit was filed, and registration was made of the bonds. The approval of the Attorney General mentions and approves the bonds, but says nothing about the mortgage and pledge of revenues, which were a part of the directors' order providing for the obligations. Again we doubt whether his approval was required on the mortgage, a mortgage not being mentioned in Section 6 either. We think, however, the reasonable effect of his approval extended to all that was before him for approval. Silence touching the mortgage ought not to be held a fatal disapproval, the statute not clearly applying to a mortgage at all.

This mortgage, in the form of a deed of trust to secure the bonds, is voluminous. The language of the statutes which authorize a mortgage is general. Provisions of this mortgage which go no further than mortgages commonly go to make available the security for the debt are authorized. Any that go beyond that, especially in dispossessing the directors of the District of their functions as duly elected public officers, ought to be held void, and if ambiguous, ought to be enforced only in a manner to preserve and apply the security. The directors are chosen in a public election for fixed terms, take an official oath, and give an official bond, and have duties of a public nature prescribed by statute, which they cannot do away with. The trust deed expressly provides that the District, meaning its directors, shall fix and maintain rates and charges sufficient to maintain and operate the properties and pay the principal and interest of the bonds as they mature, and to create a reserve fund; and shall levy taxes which will sufficiently supplement other monies; and that the management and control of the properties while incumbered by the deed shall be in the hands of the directors as provided by law. Defaults are defined, upon the happening of which, on request of the bondholders, the trustee shall enter upon and take possession of the trust estate or any part thereof, and may exclude the District, its agents and servants wholly therefrom, and collect and receive all rents, issues and income therefrom, and conduct and operate the same, *so far as legally permitted,* to the same extent and in the same manner as the District might lawfully do. This provision for possession on default is common in mortgages, and we think may be sustained. But it does not supersede the statutory right and duty of the directors to fix rates and levy and collect taxes. Any failure on the part of the directors to do their official duty in these matters is to be remedied by mandamus or injunction through the courts. The taking possession by the trustee, however, in-

cludes the right to supersede ordinary employees, if no contracts are thereby broken, and to operate physically the properties with efficiency and economy, and to collect the revenues as agreed, other than taxes. Appointing or dispensing with an assistant tax assessor and collector, an attorney to collect taxes, and a police officer to maintain order on the premises remain within the power of the directors. They have the right to maintain their own office where they will, to appoint their own depository for tax funds, and to keep possession of their records, affording the trustee and its agents reasonable access to the records. The decree is too broad in its requirements about the matters just mentioned and must be revised.

The possession by the trustee which we sanction is not a permanent or indefinite possession. As the deed provides, it may be terminated by removing the defaults. So it may be followed by a sale under power, or by a foreclosure, with or without a receivership. The exercise of the power of possession is, like a receivership, for the benefit of all concerned, until further steps are taken. The ownership and use of the property are not changed thereby; the trustee is but an agent acting under the irrevocable authority given by the deed. The directors are still in office, and must exercise the powers they have not relinquished and those they could not relinquish. Whether the situation can well be handled under the possession by the trustee, or requires the interposition of a receiver as prayed by the directors, is for the discretion of the trial judge.

We think the decree is further too broad in requiring generally that the directors "perform each and every contractual duty with respect to enforcing taxes * * * and despatching the business of the District promptly and efficiently and in harmony and cooperation with the trustee." An injunction ought to be more specific, pointing out with definiteness what is to be done or not done. The injunctions against breaching certain covenants in the deed are subject to the same criticism. The provision that the Tax Collector pay out funds without the countersignature of the directors appears to go too far, if it means that the directors are to relinquish responsibility for and control over the tax monies. We think the decree should be set aside and a new one framed in the light of this opinion, and after hearing any further evidence that may be offered on the issues involved. To this end the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.