# THE ATTORNEY GENERAL
## OF TEXAS


April 4, 1949

This Opinion
Overrules Opinion
*0-43044* O-7338

Overruled by W.W.-188

Hon. E. V. Spence, Chairman
Board of Water Engineers
Austin, Texas

Opinion No. V-803

Re: Authority of Board to
entertain appropriation
application of Upper
Colorado River Authority

Dear Sir:

The question submitted for opinion is contained in your letter, which we copy in part as follows:

"In Attorney General's Opinion No. 0-7338, approved August 9, 1946, it is held that the Upper Colorado River Authority, a state agency, created by acts of the Regular Session of the 44th Legislature, Chapter 126, is not required to secure a permit from the Board of Water Engineers to appropriate waters within its boundaries and that the Authority is not subject to payment of fees prescribed by Articles 7497 and 7532, Vernon's Annotated Civil Statutes of Texas.

"Notwithstanding this opinion, the Upper Colorado River Authority cannot get its proposed projects financed without having first secured a permit from the Board of Water Engineers protecting its source of water supply under the Doctrine of Appropriation. Therefore, the Authority filed its application and was granted permit by the Board covering its Robert Lee project on the Colorado

River in Coke County, and is now preparing to file an application to appropriate and use the waters stored in the North Concho River Flood Control Project in Tom Green County for municipal, industrial and irrigation purposes.

"Article 7501, Vernon's Annotated Civil Statutes of Texas, reads as follows:

"'Every such application shall be accompanied by the fees hereinafter provided, and shall not be filed or considered until such fees are paid.'

"In view of Article 7501, can the Board of Water Engineers file and consider the application of the Upper Colorado River Authority for permit to appropriate the waters in the North Concho River Flood Control reservoir without it being accompanied by the fees prescribed by Articles 7532 and 7535?"

The question which you raise has been the subject of many prior opinions by this office, which we briefly review as follows:

1. Letter opinion dated June 30, 1925, by Assistant Attorney General C. L. Stone, addressed to the Game, Fish & Oyster Commission, decided that the Commission need not pay the statutory fees in order to acquire a permit to appropriate water for the purpose of maintaining a game preserve and fish hatchery. The basis of the opinion is that since game, fish, water, and permit fees are all the property of the State, and since the fee statutes do not expressly require the commission to pay the fees, none need be paid.

2. Letter opinion dated January 3, 1938, by Assistant Attorney General Russell Rentfro, addressed to the Board of Water Engineers, involves the liability of the Federal Farm Security Administration for payment of said fees. The above opinion of June 30, 1925, was distinguished on the ground that the same community of interests between game, fish, water, and fees existing there did not exist in the case of the Federal Farm Security Ad-

ministration. The opinion holds that since the fees
are not taxes, so as to forgive payment thereof
by the Federal Government, and Article 7532 being
mandatory, your Board had no alternative but to
collect the fees prescribed by said article.

3. Letter opinion dated March 8, 1938,
by Assistant Attorney General H. L. Williford,
addressed to the Brazos River Conservation and
Reclamation District, holds said District exempt
from the fees in question. It was suggested in
the letter requesting the opinion that since the
fees are paid by your Board directly into the Gen-
eral Revenue Fund and since the net revenue of the
Brazos District is also paid into said fund, pay-
ment of the fees would be nothing more than a
bookkeeping transaction, and therefore need not
be paid. The opinion recognizes this argument
but bases its holding upon utility considerations,
stating that since "the entire enterprise is an
undertaking by the State to conserve its public
waters and to utilize same for the benefit of the
State in its entirety . . . the fees are not re-
quired."

4. Letter opinion dated May 4, 1938, by
Assistant Attorney General H. L. Williford, ad-
dressed to Upper Red River Flood Control and Irri-
gation District holds such district not liable for
the fees. Utility considerations were again em-
ployed, it being pointed out that the Irrigation
District is a state agency exercising powers and
privileges in furtherance of governmental pur-
pose. In addition, it was stated that one depart-
ment of government is not required to pay another
department a license or privilege tax since this
would be merely paying the revenue of the State
into the revenue of the State.

5. Letter opinion dated May 13, 1938, by
Assistant Attorney General Eugene Tate, addressed to
Board of Water Engineers, overrules the Williford
opinion of May 4, 1938, and holds the Upper Red Ri-
ver Flood Control & Irrigation District liable for
the fees. Earlier opinions were reviewed and the
Game, Fish and Oyster Commission and Brazos District
opinions approved. It is clear, however, that the
Brazos opinion was not approved upon the utility

basis upon which it was decided but upon the basis suggested for decision, namely, that the net revenues of the Brazos District ultimately find their way into the General Revenue as do the fees collected by your Board. Because the Upper Red River District's Act did not contain this net revenue provision, it was held liable for the fees.

6. Opinion No.O-78, dated January 13, 1939, addressed to the State Parks Board, holds such Board not liable for the fees. This opinion reviews all prior opinions and adopts as its basis the above indicated fee theory. It is asserted that the Parks Board falls within that class of governmental agency which is not required to pay the fees since its revenues go into and come out of a State fund.

7. Opinion No.O-4304, approved February 9, 1942, addressed to the Lower Colorado River Authority, holds the Authority not liable for the fees. The basis of this opinion is the inability of the Authority to spend its funds for any but a statutory purpose. It was decided that the Authority acquires no right through such a permit, its right to appropriate being conferred by its Act, in consequence of which payment of the fee in order to secure the permit would be use of its funds for a non-statutory purpose. The earlier opinions on the subject were not discussed. Neither the Upper nor Lower Colorado Acts contain a provision whereby net revenues go into the General Fund.

8. Opinion No.O-7338, approved August 9, 1946, addressed to the Upper Colorado River Authority, reaches the same result and for the same reason as that set forth in Opinion No.O-4304, supra.

Article 7532, V.C.S., sets up the various fees in question. The opening sentence of said article provides that "The Board shall charge and collect for the benefit of the State the fees hereinafter provided. . . ." The fees referred to under this language are of three types, viz., filing fees, recording fees and fees for making certified copies. For example - a filing fee is required for each presentation, application for permit, petition for formation of a district, application for approval of bond issue, application for adjustment or fixing of rates, and application for extension of time. A recording fee is re-

quired for the filing of any instrument which is recorded in the office of the Board. A fee is also provided for certification by the Board of any instrument or map desired to be certified. In addition to the above fees, Article 7532 provides for a use fee, also to be collected for the benefit of the State, such fees being required for the use of water for irrigation, for hydraulic power, for parks, pleasure resorts and game preserves and the amounts in which these fees are payable are based upon the volume of the proposed power or water consumption. In conclusion, Article 7532 provides that "the fees paid upon application for a permit other than the filing fee herein provided shall be held by the Board until said application is passed upon and if same is not granted, such fees shall be returned to the applicant therefor. . . ."

Article 7533, V. C. S., provides that the fees and charges collected by the Board of Water Engineers shall be immediately deposited in the State Treasury to the credit of the General Revenue Fund.

Article 7535, V. C. S., merely allows an installment method of payment when the fees exceed the sum of $1,000.00, and has no real bearing on the subject involved herein.

Where this office has held that a particular State agency need not pay the fees, this is necessarily also a holding that, in drawing the statutory provisions dealing with fees, the Legislature intended in the first place to exempt such agencies. It consistently follows therefore that the Legislature did not intend for Article 7501 to have a mandatory effect so as to require in these exceptional cases the collection by you of the fees prior to your taking action on the application. In other words, Article 7501 is not mandatory as to those agencies which are not required to pay fees.

Generally, this answers your question. However, in order to fully reply, it is necessary to solve certain problems raised by the above opinions of this office.

Excluding Opinion No. 0-4304 dealing with LCRA and Opinion No. 0-7338 dealing with UCRA, the ultimate conclusion of the above opinions is that the

fees are not payable in two instances: (1) If
the receipts of an agency go into some State fund
and, because the fees go into a State fund, the
agency is exempt; (2) Where the subject matter
under the control of the agency is State property,
such as fish, the water required for the protec-
tion thereof being also State property, no fee
is required.  Up to the time of Opinions 0-4304
and 0-7338, the foregoing were the principal, if
not only, two bases upon which exemption could be
allowed.  Although we have excepted these opinions,
actually they form no basis upon which a prospec-
tive exemption can be allowed.  The holding of
these opinions is merely that the Districts require
no permit, obtain no right under it, and, being
able to spend their funds only in furtherance of
the statutory purposes for which they were created,
are legally unable to pay the fees.

It appears from the statement of facts
contained in your letter that in order to finance
its North Concho River Flood Control Project, it
is necessary for UCRA to acquire the usual permit
forming the basis of an appropriative water right.
It is evident that UCRA requires for a very practi-
cal reason a permit in this instance.  If the
Districts require a permit, it is no longer an ans-
wer to the question of payment of fees to say that
because they do not require it they cannot pay for
it.

An examination of the Acts of Upper and
Lower Colorado River Authorities will show that
their acts are nearly identical.  See LCRA, Acts
1934, 4 C.S.,ch.7; UCRA, Acts 1935, ch.126; and
amendments; (both Acts are carried in V.C.S.
following Article 8197f).  With one minor exception,
Section 8 of both Acts contains this identical pro-
vision (from UCRA's Act):

"'Sec.8.  The Board shall establish
and collect rates and other charges for
the sale or use of water, water connections,
power, electric energy or other services
sold, furnished, or supplied by the District,
which fees and charges shall be reasonable
and nondiscriminatory and sufficient to
produce revenues adequate, in addition to
funds received from tax diversion;

"'(a) to pay all expenses necessary
to the operation and maintenance of the
properties and facilities of the District;

"'(b) to pay the interest on and
principal of all bonds issued under this
Act when and as the same shall become
due and payable;

"'(c) to pay all sinking fund and/or
reserve fund payments agreed to be made
in respect of any such bonds, and payable
out of such revenues, when and as the
same shall become due and payable; and

"'(d) to fulfill the terms of any
agreements made with the holders of such
bonds and/or with any person in their
behalf.

"'Out of the revenues which may be
received in excess of those required for
the purposes specified in subparagraphs
(a), (b), (c) and (d) above, the Board
may in its discretion establish a reason-
able depreciation and emergency fund, or
retire (by purchase and cancellation or
redemption) bonds issued under this Act,
or apply the same to any corporate purpose.

"'It is the intention of this Act
that the rates and charges of the District
shall not be in excess of what may be
necessary to fulfill the obligations im-
posed upon it by this Act. . . .'"

The same degree of similarity existing be-
tween the Colorado Acts does not exist between them
and the Brazos River Reclamation and Conservation
District's Act. For the most part, these differences
lie in language employed rather than in substance.
Substantially, and especially as regards district
objectives and functions, the Acts are the same.
With respect to revenues, the Brazos Act (Acts 1935,
1st C.S., ch. 368, sec.6, copied V.C.S. following
Article 8197f) provides as follows:

"'Sec.6. It is contemplated by this
Act that the Brazos River Conservation and

Reclamation District will apply for and receive the cooperation of the United States of America in alleviating the public calamity herein declared, and that beneficial uses may be found for the flood waters impounded, which are hereby declared incidental to the purpose of removing said public calamity, and that revenues will be derived from such incidental benefits; all of which, together with the funds hereby donated and/or granted shall be used during the time and for the purposes herein specified, to the end that such public calamity may be averted. Until all obligations herein authorized have been fully discharged, the tax money hereby donated and/or granted to the District, together with the net revenues as herein defined accruing to the District from any other sources whatsoever shall be used exclusively for the purpose of discharging said obligations and for the proper operation and maintenance of the improvements proposed to be constructed; but after all of such obligations have been paid in full, then the revenues accruing to the District from all sources whatsoever, shall be used by the District; first, to pay the reasonable cost of collecting such revenues; second, for the cost of the operation, maintenance, depreciation, replacement and betterment of the properties acquired and controlled by the District; third, for the completion of the necessary units of the coordinated connected system by water conservation that will prevent the public calamity declared to exist; and the balance of such revenues shall be paid annually, not later than March 1st of each year, to the Treasurer of the State of Texas and by him placed in a General Revenue Fund.

"The term 'net revenue' as used in this Act shall be construed to mean the revenues of the District, from whatsoever source derived remaining after the payment of all costs of collection, all costs of operation and maintenance, depreciation,

replacement and betterment of the prop-
erties owned and/or acquired and/or
controlled by the District, and the es-
tablishment and the maintenance of an
adequate depreciation and emergency
fund sufficient to construct, replace
and/or repair works, and/or properties
when and if necessary."

Instead of limiting net revenue to opera-
tional cost and providing that net revenue over and
above these costs may be devoted in furtherance of
statutory purpose, as was done in the Colorado Acts,
the Legislature has made provision in the Brazos
Act for turning net revenue to the General Fund.
This difference in method of disposing of net reve-
nue should create no distinction, since all three
Districts are conservation and reclamation districts
created pursuant to Section 59, Article XVI of the
Constitution; and under no circumstances would they
be authorized to produce a profit over and above
constitutional and statutory costs. As a practical
matter, of course, year to year revenues might not
exactly equal such costs and as to any net revenues
so produced some provision was necessary. In pro-
viding on the one hand that these net revenues be
put back to corporate purpose and, on the other,
that they be put in the General Fund should not
create a distinction which can have any material
bearing on the fee question here involved.

The Colorado and Brazos Districts were cre-
ated pursuant to the conservation amendment to the
Constitution, Sec. 59, Art. XVI. A casual reading of
the Acts reveals that the Districts were intended to
accomplish the same public purpose. This similarity
has been recognized by our Supreme Court. See Brazos
River Conservation & Reclamation District v. McCraw,
126 Tex. 506, 91 S.W.2d 665, 672; and Lower Colorado
River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629.

In view of this similarity and because of
the absence of any substantial difference of result in
the handling of net revenues, as that difference re-
lates to the fee question, we are of the opinion that
the same exemption accorded the Brazos District should
be accorded the Colorado Districts. Believing this
to be sufficient reason for exemption, we withdraw
Opinion O-4304 and Opinion O-7338 and substitute in-

stead this opinion. A copy of this opinion has been
furnished the Upper and Lower Colorado River Authori-
ties to apprise them of this action.

As indicated earlier, Article 7501 is not
mandatory as to those Governmental agencies found
to be exempt from the payment of fees. Such Article
is not mandatory as to the Upper Colorado River Au-
thority and you may file and consider its applica-
tion although not accompanied by the fees provided
by Article 7532.

## SUMMARY

The Board of Water Engineers
may file and consider an appropria-
tion application filed by Upper Colo-
rado River Authority even though such
application is not accompanied by the
fees prescribed by Article 7532,V.C.S.
Opinions O-4304 and O-7338 by previous
administration withdrawn.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     H. D. Pruett, Jr.
            Assistant

HDP:bt

APPROVED

Price Daniel
ATTORNEY GENERAL