## AUSTIN MILL & GRAIN CO. v. BROWN COUNTY WATER IMPROVEMENT DIST. NO. I.

### No. 8859.

Court of Civil Appeals of Texas. Austin.

April 26, 1939.

Rehearing Denied May 24, 1939.

Collins, Jackson & Snodgrass, of San Angelo, and McGillivray Muse, of Dallas, for appellant.

McCartney, McCartney & Johnson, of Brownwood, and Greenwood, Moody & Robertson, of Austin, for appellee.

BLAIR, Justice.

Appellee, Brown County Water Improvement District No. 1, sued appellant, Austin

Mill & Grain Company, for certain taxes alleged to be due the district for the years 1934, 1935, and 1937, aggregating, with penalties, the sum of $2,748.06. The taxes sued for represent three separate items of taxes levied by the Improvement District, to pay (1) interest and create a sinking fund for the payment of bonded indebtedness; (2) to pay expenses of assessing and collecting taxes; and (3) to pay current and maintenance expenses of·the district. The first two items of the taxes sued for are not contested. As to the current and maintenance item, appellant denied liability therefor upon the ground that Sec. 59(c) of Art. 16 of our Constitution, Vernon's Ann.St., prohibited the levy and collection of such taxes because not authorized by vote of the qualified voters of such district. This presents the main question in the case.

We have reached the conclusion that the maintenance tax is void because not authorized by the voters of the district as required by Sec. 59(c) of Art. 16 of the Constitution.

Appellee district was created in 1926, under authority of Sec. 59, Art. 16 of the Texas Constitution, Vernon's Ann.St. and Chap. 87 of the General Laws passed by the 35th Legislature in the year 1917, and the amendatory and supplemental acts thereto. After its organization, the taxpayers of the district voted bonds in the sum of $2,500,000, for the purpose of constructing a dam on the Pecan Bayou and the erection of other necessary facilities with which to irrigate the valley land lying below the dam. For the purpose of securing a reservoir site covering more than 7,000 acres of land, and to construct the dam across the Pecan Bayou below its junction with another stream called Jim Ned Creek, $1,340,000 of the bonds were sold; and this portion of the project was completed in 1932. The funds derived from the bonds sold were exhausted; and because of the general depression prevailing everywhere the remainder of the bonds could not be sold, and the district was unable to obtain funds for the completion of its undertaking and had no funds with which to pay maintenance expenses of the dam and reservoir. In 1932, without submitting the matter to a vote of the people, it began to levy and collect the maintenance tax sued for from the property owners in said district, ranging from 3¢ to 20¢ per annum on the $100 valuation of all property within the district. The agreed stipulation shows that the expenses of maintenance and operation for which the maintenance tax was levied was legally incurred by the district, and were such expenses as the district might levy taxes for, if such levy and collection had been authorized by the vote of the people, as required by Sec. 59(c) of Art. 16 of the Constitution.

A trial to the court without a jury resulted in judgment for the taxes sued for, including the maintenance tax herein contested.

Subd. (a) of Sec. 59, Art. 16, is a declaratory provision, expressing in general terms a desire of the people to preserve and conserve the natural resources of this state, and directing the legislature to pass all laws appropriate to accomplish such purpose.

Subd. (b) provides for the creation of districts for the conservation of natural resources; for irrigation and reclamation districts, etc.; and declares the same shall be governmental agencies and bodies politic and corporate, with power and authority to exercise such rights, privileges, and functions concerning the subject-matter of the amendment as may be conferred by law.

Subd. (c) reads as follows: "The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as may be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted." Sec. 59, Art. 16, adopted election Aug. 21, 1917; proclamation October 2, 1917.

We construe this section of the Constitution to specifically define the "indebted-

ness" which the legislature may authorize and the manner in which said "indebtedness" may be incurred and paid for. By it the people directed the legislature to authorize all such indebtedness as may be necessary for the construction and maintenance of such district. The legislature was then directed to authorize, levy and collect such taxes as may be necessary for the maintenance of the district and its improvements; and to create a lien upon the property assessed for the payment thereof; provided such taxes have been authorized by a vote of the qualified voters of such district. Thus the people specifically declared what constituted indebtedness within the purview of the constitutional amendment when they adopted it; and left nothing for the determination of either court or the legislature on that phase of the law. They provided that "indebtedness" to be paid out of taxes should include not only the construction and improvement costs, but also obligations arising for the maintenance of the district as well. Manifestly, it was the intention of the people in authorizing irrigation districts, that maintenance and operating costs should be ordinarily paid out of revenues derived from the sale or use of waters furnished for irrigation or other uses. It is easy to understand why the owners of the property in the district would be willing to vote bonds for the construction of such an irrigation project, knowing that maintenance and operating expenses would ordinarily be paid out of the revenues obtained from the sale or furnishing of water; but would not be willing to create such a project if its maintenance and operating expenses were to be met by a tax imposed on their properties in the district. The Constitutional amendment, therefore, specifically provided that all taxes levied for the purposes of paying any "indebtedness", whether for construction or maintenance, must be authorized by a vote of the qualified voters of the district.

It is agreed that in the instant case the taxpayers have only voted for the issuance of bonds for the purpose of constructing the irrigation project, and not for its maintenance. And under the facts stated we regard the question presented as having been definitely determined by the Supreme Court in the cases of Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629, 630; Brazos River Conservation & Reclamation Dist. v. McCraw, 126 Tex. 506, 91 S.W.2d 665; Brady v. Hidalgo County Water Imp. Dist., 127 Tex. 123, 91 S.W.2d 1058. See also 44 Tex.Jur., 295, Sec. 194.

In the Lower Colorado Authority case, the question presented was whether the legislature could itself create a non-taxing water improvement district, in view of the provisions of Sec. 59(c), of Art. 16 of the Constitution requiring that a water improvement taxing district may only be created by a vote of the qualified voters of the district. Speaking through Mr. Justice Critz, the Supreme Court held that since no taxes were to ever be levied upon the properties of the district for construction or maintenance of the project, it was within the power of the legislature to create it and provide for the payment of its "indebtedness" out of revenues; and that it was not necessary to submit the question of the creation of the district to the qualified voters therein. In reaching its conclusion, it was necessary for the court to determine what was meant by the word "indebtedness" as used in said Sec. 59(c) of the Constitution, and it was held to mean any "indebtedness" or obligation to be serviced or paid for out of taxes; the court necessarily holding that if the debt or obligation was to be paid out of taxes, then only the qualified voters of the district could authorize the taxes.

The same question was presented in the case of Brazos River Conservation case, supra, and in which the Supreme Court, speaking through Chief Justice Cureton, again held that it was only necessary to submit the creation of the district to a vote of the people when the district proposed was to be a taxing district; and again construed the term "indebtedness" as meaning any indebtedness, whether for construction or maintenance, which was to be paid out of taxes.

In Brady v. Hidalgo County Water Improvement District, supra, the district was a water improvement taxing district. As in the instant case, it voted bonds to construct an irrigation project; but had not completed it, and had no funds for maintenance and operation; and had not submitted for approval of the taxpayers of the district a maintenance tax. The court held in that case that while the specific contract sought to be enforced, the payment of an engineer for his work in developing the project, specifically provided that he should

be paid out of the bond issue funds, the court nevertheless went further and held that although the district had no operating or maintenance expense account, it could not be compelled by injunction to levy taxes for the purpose of paying this debt lawfully contracted. The court further held that maintenance and operating expenses of such a water control and improvement district which had voted only construction bonds, must come from water rentals and service charges after the completion of the district.

■ ■ Eminent counsel insist that because the specific facts involved in the above cited cases do not parallel the facts involved in the instant case, that the language, although broad enough to cover the instant case, is mere dictum. We do not so construe the opinions. The Supreme Court had before it the question of non-taxing and taxing districts. It had to determine the nature of each such district, and the power and authority of the legislature or the people to create indebtedness against the respective districts, and the manner of paying same. In meeting this situation, the Supreme Court specifically held that non-taxing districts could be created by the legislature and their bonded indebtedness be paid out of revenues other than those raised by taxation. With respect to the taxing districts, as distinguished from the non-taxing districts, the Supreme Court held that an indebtedness of any character of such district which was to be paid out of taxes must be authorized by a vote of the taxpayers of the district who would be compelled to pay same. Such construction of the constitutional provisions and the statutes in aid thereof cannot be dictum, but expresses the carefully stated views and specific construction placed upon them by the highest court of our state. We regard the cases as full authority for our decision that the maintenance tax imposed herein is unconstitutional and void because not authorized by a vote of the people of the district affected.

Since the Constitution prohibits the imposition of the maintenance taxes sought to be recovered, unless authorized by the qualified voters of the district, the statutes relied upon by appellee as validating or authorizing the collection of such taxes are unconstitutional and void, and need not be discussed.

■ The remaining question relates to the interest, penalties, and attorney's fees sought to be collected upon the first two items of taxes legally due the district. Appellant insists that since a part of the taxes demanded and sued for is illegal, the taxpayer is not liable for penalties, interest, and attorney's fees on the part of the taxes admitted to be valid. We do not sustain this contention. And the evidence is conflicting as to whether appellant ever actually tendered the taxes legally due. The trial court found that no legal tender of the taxes legally due had ever been made by appellant. Appellee is, therefore, entitled to recover the first two items of taxes sued for, together with the interest, penalties, and attorney's fees due on the legal portion of such taxes.

The judgment of the trial court is, therefore, reformed so as to exclude a recovery of the maintenance taxes, interest, penalties, and attorney's fees claimed thereon; but is otherwise affirmed so as to authorize a recovery of the first two items of taxes, together with interest, penalties, and attorney's fees due thereon.

Reformed and affirmed.

BAUGH, J., not sitting.