BROWN COUNTY WATER IMPROVEMENT DISTRICT NUMBER ONE
V. AUSTIN MILL & GRAIN COMPANY.

No. 7617. Decided March 20, 1940.
Rehearing overruled June 26, 1940.
(138 S. W., 2d Series, 523.)

*McCartney, McCartney & Johnson* and *C. L. McCartney,* all of Brownwood, *Greenwood, Moody & Robertson* and *Thomas B. Greenwood,* all of Austin, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the Constitution prohibits the imposition of the maintenance tax sought to be recovered, unless authorized by the qualified voters of the district. McFaddin v. Jefferson County Drainage Dist., 4 S. W. (2d) 33; Ogburn v. Bartow Drainage Dist., 230 S. W. 1036; Wharton County Drainage Dist. v. Higbee, 149 S. W. 381.

*Collins, Jackson & Snodgrass,* of San Angelo, *McGillivray Muse,* of Dallas, for defendants in error.

Improvement districts are without power to levy and assess a maintenance tax except when authorized by a qualified vote of the taxpayers in such district. Lower Colorado Authority v. McCraw, 125 Texas 268, 83 S. W. (2d) 629; Brazos River Conservation District v. McCraw, 126 Texas 506, 91 S. W. (2d) 665; Foster v. City of Waco, 113 Texas 352, 255 S. W. 1104.

*J. F. Ewers* and *Vernon B. Hill,* both of Mission, and *Robt. E. Kirkpatrick,* of Mercedes, filed brief as amici curiae.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

Brown County Water Improvement District Number One, herein called plaintiff, was organized in 1926, under what is now Chapter 2, .Title 128 of the Revised Statutes of 1925. (Arts. 7622 to 7807). It was created under authority of Section 59, Article 16, of the Constitution, and is subject to all of its provisions.

After its organization it issued bonds, by authority of an election for that purpose, in the sum of $2,500,000, for the purpose of constructing a dam on Pecan Bayou, and the erection of other necessary facilities with which to irrigate the land lying below the dam. For the purpose of securing a reservoir site covering more than 7,000 acres of land, and to construct the dam, $1,340,000 of the bonds were sold; and this portion of the project was completed in 1932. The funds derived from these bonds were exhausted. Because of the general depression prevailing at the time the remainder of the bonds could not be sold, and the district was unable to obtain funds for the completion of its undertaking, and had no funds with which to pay maintenance expenses of the district and the improvements. In 1932, without submitting the matter to a vote of the people, the district began to levy and collect a maintenance tax, assessed against the property of owners in the district, ranging from 3c to 20c per annum on the $100 valuation of property within the district.

The present suit was instituted by plaintiff against Austin Mill & Grain Company, herein designated defendant, to recover taxes alleged to be due the district for the years 1934, 1935 and 1937, aggregating, with penalties and interest, the sum of $2,748.06. The taxes sued for represent three separate items levied by the district for the following purposes: (a)

.To pay interest and create a sinking fund for the payment of the bonds; (b) to pay expenses of assessment and collecting taxes; and (c) to pay current and maintenance expenses of the district and improvements. The first two items are not contested. As to the third item defendant denies liability on the ground that such taxes could not lawfully be levied and collected, because not authorized by vote of the qualified voters of the district.

It is agreed that the obligations for the payment of which these taxes were levied were lawfully and regularly incurred from year to year by the board of directors of the district, for its use and benefit, for the respective years for which said taxes were levied and assessed, or attempted to be levied and assessed, and that said debts and obligations were reasonable in amount for the several purposes for which same were incurred, either for labor and services performed, or for materials furnished to the district.

It is further agreed that no election was ever called or held submitting to the voters of the district the proposition as to whether the district should be authorized to levy and collect any taxes other than those for the interest and sinking fund on the bonds.

The Court of Civil Appeals held that the maintenance taxes in question were invalid, because not authorized by vote of the property taxpaying voters of the district. 128 S. W. (2d) 829. Writ of error was granted because of the constitutional question involved. Having reached the conclusion that the holding of the Court of Civil Appeals is correct, there is but little which can be added to its opinion.

For purposes of this discussion it is assumed that statutory authority existed for levying the maintenance taxes. Notwithstanding this, however, if a vote of the taxpaying voters was an essential prerequisite, the taxes were invalid. We are of the opinion that the matter is determined by a construction of the language of Subdivision (c) of Section 59, of Article 16, of the Constitution, and that the construction of this particular section, as regards the question here involved, has not been directly passed upon by this Court.

As the controversy between the parties is waged largely around Subdivision (c) of Section 59 of Article 16, we are setting out same in full. For convenience in arriving at the meaning of same we are setting it out in designated subdivisions, retaining the original punctuation:

"(a) The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the main-

tenance thereof requisite to the achievement of the purposes of this amendment,

"(b) and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as may be prescribed by law,

"(c) and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for payment of the interest and the creation of a sinking fund for the payment of such bonds;

"(d) and also for the maintenance of such districts and improvements,

"(e) and such indebtedness shall be a lien upon the property assessed for the payment thereof;

"(f) provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property taxpaying voters of such district and the proposition adopted."

■ Looking at said constitutional provision more in detail we find that Subdivision (a) empowers the Legislature to authorize all such *indebtedness* as may be necessary to provide all improvements and the maintenance thereof. Manifestly, the "indebtedness" which, under this provision, the Legislature may authorize, means all enforceable obligations which may be incurred, regardless of the conditions of their payment or the time in which they may be payable. In other words, "indebtedness," as here used, has no technical or special meaning, but obviously has a broad significance as covering all debts or obligations created for improvements or maintenance.

Subdivision (b) declares that *"such* indebtedness" may be evidenced by bonds. Obviously, the word "indebtedness" here has the same meaning as in the preceding paragraph.

Subdivision (d), when read in the light of the preceding language, means that the Legislature shall also authorize the levying and collection of such taxes as may be necessary "for the maintenance of such district and improvements," and this is immediately followed by the language (Subdivision e) "and *such indebtedness* shall be a lien upon the property assessed for the payment thereof." Here again the indebtedness mentioned is manifestly the same mentioned in the preceding paragraphs, and necessarily means all debts or obligations incurred in connection with improvements and maintenance. The word still has no special or technical meaning.

Then follows the provision which is the subject of debate.

It is necessary to repeat same with emphasis upon the controlling words:

"Provided the Legislature shall not authorize the issuance of any bonds or provide for *any indebtedness* against any declamation district unless such proposition shall first be submitted to the qualified property taxpaying voters of such district and the proposition adopted."

■■ The words "any indebtedness" are emphatic and inclusive. We are called upon, however, to say that the words "indebtedness" in this provision does not have the same broad meaning or significance which it undoubtedly has in the preceding subdivision where it is used. The contention is that as here used it has the restricted meaning given to the word "debts" in Section 5, Article 11, of the Constitution pertaining to cities and towns. See McNeill v. City of Waco, 89 Texas 83, 33 S. W. 322. We perceive no reason for giving this word this special meaning, when its true meaning is clearly apparent from its own context. It is a general rule that words are usually given a broad and liberal meaning, if necessary, in order to effecutate the purpose of the constitutional provision of which they are a part. It may be safely said that one of the dominant purposes of the constitutional provision in question was to prevent the burdening of property with tax liens, except with the approval of the taxpayers themselves, formally expressed in an election for that purpose. So, in light of this manifest pur pose, it is plain that the "indebtedness" mentioned in this provision is exactly the same indebtedness mentioned in Subdivision (e), where it is said, "such indebtedness shall be a lien upon the property assessed for the payment of same."

While the prohibition is primarily against indebtedness, yet it is apparent that if the taxes be assessed and a lien created against the property without approval of the taxpayers, the prohibition of the Constitution will be defeated, regardless of how the money may be expended.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court March 20, 1940.

Rehearing overruled June 26, 1940.