

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

July 29, 1958

Hon. Feagin W. Windham
District Attorney
Orange County
Orange, Texas

Opinion No. WW-480

Re: Is the Commissioners'
Court authorized to levy
an ad valorem tax upon
all taxable property
within Orange County for
the purpose of establish-
ing a general fund to be
used for the maintenance,
upkeep, repairs and addi-
tions to the improvements
of the Orange County
Conservation and Reclama-
tion District without
first causing an election
to be held for the pur-
pose of establishing a
rate in accordance with
the provisions of Article
8013, Texas Revised Civil
Statutes, 1925?

Dear Mr. Windham:

You request the opinion of this office upon the above
captioned matter.

The facts submitted by you may be thus summarized: In
1931, there was legally created, in compliance with Section
59 of Article XVI of the Constitution of Texas, and appro-
priate statutory provisions, the Orange County Conservation
and Reclamation District. Said district is co-extensive with
the boundaries of Orange County. After the creation and
establishment of said Conservation and Reclamation District,
bonds were voted and issued by the district as provided by
statute. The issuance of said bonds were submitted to and
voted by the requisite number of qualified voters of the
district, and appropriate provisions were made for the levy,
assessment and collection of a tax to meet this bonded indebted-
ness. There is not at this time nor has there heretofore been
any question of validity of the creation of said district or
the bonds.

The specific question now before us is the validity of

the assessment and collection of a maintenance tax without submitting the same to the voters of the district. You state that there has never been an election by the voters of the district for a maintenance tax, but that such a tax has been levied and assessed for many years notwithstanding the absence of an election.

We are quite reluctant at this late date to hold that the district is without authority to levy and assess a maintenance tax in the absence of an election, but we have no other alternative.

The Orange County Conservation and Reclamation District was created pursuant to the statutes enacted under the constitutional authority granted by Section 59 of Article XVI of the Constitution. The question you submit has been answered by the Supreme Court in the case of Brown County Water Improvement District No. 1 vs. Austin Mill and Grain Company, 135 Tex. 140, 138 S.W.2d 523. We take the liberty to quote from this case rather fully because it bases the ruling primarily upon the Constitution. In this case, the Court said:

> "The Court of Civil Appeals held that the maintenance taxes in question were invalid, because not authorized by vote of the property taxpaying voters of the district. 128 S.W.2d 829. Writ of error was granted because of the constitutional question involved. Having reached the conclusion that the holding of the Court of Civil Appeals is correct, there is but little which can be added to its opinion.

> "For purposes of this discussion it is assumed that statutory authority existed for levying the maintenance taxes. Notwishstanding this, however, if a vote of the taxpaying voters was an essential prerequisite, the taxes were invalid. We are of the opinion that the matter is determined by a construction of the language of Subdivision (c) of Section 59, of Article 16, of the Constitution, and that the construction of this particular section, as regards the question here involved, has not been directly passed upon by this court.

> "As the controversy between the parties is waged largely around Subdivision (c) of Section 59 of Article 16, we are setting out same in full. For convenience in arriving at the meaning of same

we are setting it out in designated subdivisions,
retaining the original punctuation:

'(a) The Legislature shall authorize
all such indebtedness as may be necessary
to provide all improvements and the maintenance
thereof requisite to the achievement of the
purposes of this amendment,

'(b) and all such indebtedness may be
evidenced by bonds of such conservation and
reclamation districts, to be issued under
such regulations as may be prescribed by law

'(c) and shall also, authorize the levy
and collection within such districts of all
such taxes, equitably distributed, as may be
necessary for the payment of the interest and
the creation of a sinking fund for the pay-
ment of such bonds;

'(d) and also for the maintenance of such
districts and improvements,

'(e) and such indebtedness shall be a lien
upon the property assessed for the payment
thereof;

'(f) provided the Legislature shall not
authorize the issuance of any bonds or provide
for any indebtedness against any reclamation
district unless such proposition shall first be
submitted to the qualified property taxpaying
voters of such district and the proposition
adopted.'

"/ 1/ Looking at said constitutional provision
more in detail we find that Subdivision (a) empowers
the Legislature to authorize all such indebtedness as
may be necessary to provide all improvements and the
maintenance thereof. Manifestly, the 'indebtedness'
which, under this provision, the Legislature may
authorize, means all enforceable obligations which
may be incurred, regardless of the conditions of their
payment or the time in which they may be payable. In
other words, 'indebtedness,' as here used, has no
technical or special meaning, but obviously has a
broad significance as covering all debts or obliga-
tions created for improvements or maintenance.

"Subdivision (b) declares that 'such indebtedness' may be evidenced by bonds.  Obviously, the word 'indebtedness' here has the same meaning as in the preceding paragraph.

"Subdivision (d), when read in the light of the preceding language, means that the Legislature shall also authorize the levying and collection of such taxes as may be necessary 'for the maintenance of such districts and improvements,' and this is immediately followed by the language (Subdivision e) 'and such indebtedness shall be a lien upon the property assessed for the payment thereof.'  Here again the indebtedness mentioned is manifestly the same mentioned in the preceding paragraphs, and necessarily means all debts or obligations incurred in connection with improvements and maintenance.  The word still has no special or technical meaning.

"Then follows the provision which is the subject of debate.  It is necessary to repeat same with emphasis upon the controlling words:  'Provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property taxpaying voters of such district and the proposition adopted.'

"$\boxed{2-4}$ The words 'any indebtedness' are emphatic and inclusive.  We are called upon, however, to say that the word 'indebtedness' in this provision does not have the same broad meaning or significance which it undoubtedly has in the preceding subdivisions where it is used.  The contention is that as here used it has the restricted meaning given to the word 'debts' in Section 5, Article 11, of the Constitution pertaining to cities and towns.  See McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322.  We perceive no reason for giving this word this special meaning, when its true meaning is clearly apparent from its own context.  It is a general rule that words are usually given a broad and liberal meaning, if necessary, in order to effectuate the purpose of the constitutional provision of which they are a part.  It may be safely said that one of the dominant purposes of the constitutional provision in question was to prevent the burdening of property with tax liens, except with the approval of the taxpayers

themselves, formally expressed in an election for that purpose. So, in light of this manifest purpose, it is plain that the 'indebtedness' mentioned in this provision is exactly the same indebtedness mentioned in Subdivision (e), where it is said, 'such indebtedness shall be a lien upon the property assessed for the payment thereof.'

"While the prohibition is primarily against indebtedness, yet it is apparent that if the taxes be assessed and a lien created against the property without approval of the taxpayers, the prohibition of the Constitution will be defeated, regardless of how the money may be expended."

There is no question of the authority of the district to levy, assess and collect a maintenance tax provided it is authorized by a vote of the qualified electors of the district, but until this is done any tax levied, assessed and collected would be invalid. The authority is found in Article 8013, V.C.S., and it is apparent from the opening sentence of this statute that a levy, assessment and collection of a maintenance tax may be voted by the qualified electors of the district. It plainly says "When a maintenance tax shall have been voted in any district entitled by the benefits of this Act." (Emphasis added.)

You are therefore respectfully advised that the Orange County Conservation and Reclamation District has no authority to levy, assess and collect a maintenance tax without the same being submitted and favorably voted by the required number of qualified voters of the district.

The foregoing conclusion is applicable only where a maintenance tax is levied and assessed upon an ad valorem basis. There are certain assessments and charges made by water control and improvement districts that do not require submission to the voters of the district. An election is only required for the issuance of bonds and for a maintenance tax that is supported on an ad valorem basis. This is made quite clear in the case of Moore vs. Maverick County Water Control and Improvement Dist. No. 1, Civ.App., 162 S.W.2d 1004, error refused. Certiorari denied 63 S.Ct. 993, 318 U.S. 790, 87 L.Ed. 1156. We quote from said case as follows:

"We next consider appellant's attacks upon the flat rate assessments and the assessments for the amortization and emergency fund.

"These assessments are commonly referred to as 'service charges' and may be considered together.

"Appellant contends that these service charges are invalid because they were not authorized by a vote of the property tax-paying voters of the district. As supporting this contention, he relies upon the case of Austin Mill & Grain Co. v. Brown County Water Improvement District No. 1, Tex.Civ.App., 128 S.W.2d 829; Brown County Water Improvement District v. Austin Mill & Grain Co., 135 Tex. 140, 138 S.W.2d 523.

"The Brown County case is not in point. It deals with the validity of an ad valorem tax for maintenance purposes and not with a flat rate assessment, or with an amortization and emergency fund assessment.

"The constitutional distinction between the ad valorem tax and the assessments here involved is clear and well defined. In Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629, 633, it was directly held that the constitutional vote required by Article 16, Sec. 59 Subd. (c), was applicable only 'to * * * bonds and indebtedness to be paid out of tax funds.'

## SUMMARY

The Orange County Conservation and Reclamation District has no authority to levy, assess and collect a maintenance tax upon an ad valorem basis without the same having been submitted to the voters of the district and authorized by the requisite number of qualified voters.

LPL/ba

APPROVED:

OPINION COMMITTEE:

Geo.P.Blackburn, Chairman
Jay Howell
J. Milton Richardson
Richard Wells
Wayland Rivers, Jr.

REVIEWED FOR THE ATTORNEY GENERAL
By: W. V. Geppert

Very truly yours,

WILL WILSON
Attorney General of Texas

By L. P. Lollar
L. P. Lollar
Assistant