

# THE ATTORNEY GENERAL
# OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 7, 1965

Mr. Harvey Davis
Executive Director
Texas State Soil
   Conservation Board
Temple, Texas

Dear Mr. Davis:

Opinion No. C-436

Re: Whether Attoyac Bayou
    Watershed Authority has
    the legal authority to
    develop a multiple-
    purpose reservoir to
    include recreational use
    as a purpose.

     In your letter requesting an opinion from this office,
you submit certain facts which we summarize as follows:

     Under the provisions of Public Law 566, 83rd Congress,
known as the Watershed Protection and Flood Prevention Act, a
work plan for a watershed protection, flood prevention and
recreational development for the Attoyac Bayou Watershed has
been developed by the Attoyac Bayou Watershed Authority and
by several other sponsors with the assistance of the United
States Department of Agriculture. Prior to the development
of the work plan, an application was approved as being feasi-
ble by the State Soil Conservation Board of Texas for this
watershed. Included in the work plan is one multiple purpose
reservoir project which will include among its purposes the
impounding of public waters for both flood prevention and for
recreation. Attoyac Bayou Watershed Authority proposes to
share costs with the Federal Government in developing the
recreational facilities in connection with this multiple pur-
pose dam and reservoir. The office of the General Counsel of
the United States Department of Agriculture has requested in-
formation relative to the powers of such state water district
to participate in this recreational development.

     You request the opinion of this office on the following
questions:

    1.  Does the Attoyac Bayou Watershed Authority have the
        legal authority to develop a multiple purpose
        structure which includes recreational use?

    2.  If the Attoyac Bayou Watershed Authority does have
        legal authority to develop recreational facilities,
        is it legal for the authority to use funds received

Mr. Harvey Davis, page 2 (C-436)

from taxes to finance and maintain a recreational development?

Section 59a, of Article XVI, Texas Constitution, provides:

"The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of this State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto." (Emphasis supplied)

The overriding purpose and intent of the Constitutional Amendment is clear in providing a mandate for the maximum development of all of the State's natural resources for all recognized beneficial or conservational purposes. The public policy is declared to encourage conservation, development, and utilization of water resources as well as all other natural resources to the greatest beneficial extent practicable.

Subsection (b) of the above constitutional amendment of 1917 permits the Legislature to create conservation and reclamation districts essential to the accomplishment of the purposes of the amendment, these districts to be governmental agencies and bodies politic and corporate with such powers of government, and authority to exercise such rights, privileges and functions concerning the subject matter of the amendment as might be conferred upon them.

While a right to develop natural resources for recreational purposes is not specifically mentioned in Section 59a of Article XVI of the Texas Constitution, such right would undoubtedly be included in the language.

"The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams for . . . all

-2065-

> . . .useful purposes, . . . <u>the conservation</u>
> <u>and development of its forests, water and</u>
> <u>hydro electric power</u> . . . <u>are each and all</u>
> hereby <u>declared public rights and duties;</u>
> and the <u>Legislature shall pass all such laws</u>
> <u>as may be appropriate thereto."</u> (Emphasis
> supplied)

It is pertinent to observe that no specific mention is made in the Constitutional Amendment of the right to conserve and develop for oil and gas purposes and uses, yet this Amendment was liberally construed to include these also in <u>Terrell</u> <u>v. Alpha Petroleum Co.</u>, 54 S.W.2d 821, 828, aff. 59 S.W.2d 364 (Com.App.), amended on other pts., 122 Tex. 257, 59 S.W.2d 372 (1933).

<u>Parker v. San Jacinto Water Control & Imp. Dist.</u>, 154 Tex. 15, 273 S.W.2d 586 (1954), liberally construed Sec. 59a, Art. XVI of the Texas Constitution in holding that a water district is authorized to erect and operate a sewer disposal plant, a power not expressly mentioned in the enumeration of purposes therein set out. Sewage disposal was thus held to be within the phrase in Sec. 59a, Art. XVI of the Constitution, "all other useful purposes." This case is authority for giving the Constitution a construction in support of powers necessarily or fairly implied for the accomplishment of its declared objects and purposes, while avoiding the technical rules of construction of ejusdem generis and expressio unius, which are employed only where the intent or purpose cannot be determined otherwise.

It is generally recognized by the authorities that the term "conservation of public waters" is used in the Conservation Amendment and water statutes means the development of water for beneficial uses and that recreation is a beneficial use of water. <u>Empire Water and Power Co. v. Cascade Town Co.</u>, 205 F 123 (CCA 8th, 1913), mod. in part, 205 F 130; U. S. v. <u>Ballard</u> (1960), 184 F Supp. 1, 12, note 4; 93 CJS 915-916, Sec. 172, Waters, note 78; <u>Monterey County Flood Control and</u> <u>Water Conservation Dist. v. Hughes</u> (1962), 20 Cal. Rptr. 252, 201 C.A. 2d 197; Wiel, Water Rights in the Western States (3rd Ed.), Vol. 1, p. 166; 2 Kinney on Irrigation and Water Rights (2nd Ed.) p. 1200, Sec. 696.

This philosophy is followed in Texas in Art. 7470, V.C.S. which provides that "the public waters of this state may be appropriated for any of the following purposes: ". . . public parks, . . . recreation and pleasure. . . ." The legislature

created a very complete system of laws "for the maximum judicious employment of the State waters in the public interest . . . to conserve this natural resource in the greatest practicable measure for the public welfare; . . . to take and utilize the waters of this State for uses recognized and authorized . . . (in order) to prevent the escape of waters without contribution to a beneficial public service. . . ." Art. 7472c, V.C.S.

It is settled that recreational uses or purposes are deemed such beneficial uses which usually pertain to public waters and may properly be deemed the subject of a necessary implication in connection with the grant of authority over conservation and development of the natural resources of a state. State, ex rel. State Game Commission v. Red River Valley Co., 51 N.M. 207, 182 P.2d 421, 429 (1945); Siete Partidas; 6 Tex.Law Rev. 524; Diversion Lake Club v. Heath, 126 Tex. 129, 86 S.W.2d 441, 447 (1935); 7 Tex. Law Rev. 496.

At a time when millions of dollars are being spent toward the possible development of fresh water from sea water at a reasonable cost, and at a time when the State of Texas is desirous of attracting more industry and tourists, the public cannot afford the luxury of wasting water resources.

Our advancing civilization is placing progressively greater burdens upon the existing supplies of water available for beneficial uses. Science tells us that the basic problem is not one of total supply, since that cannot be increased, but rather is one of controlling, distributing and utilizing our water supply efficiently. Demands for recreational use as well as for other uses of public water areas are expanding at phenomenal rates under the pressing stimulus of increasing population. In addition, other stimuli such as widening mobility, rising standards of living, increased personal income and the growth in leisure time of a wide segment of the public, create additional demands for recreational use of waters. Resource development through a watershed project of this nature could boost the economy of both the local area and the State of Texas. A too strict construction of the Texas Constitution, so as to prevent the development of multipurpose reservoirs which include recreation as a beneficial use would have a serious, and totally unnecessary, retarding effect on Texas economy.

If possible, that construction shall be adopted which will promote the public interest in accord with sound economic

policy.  State v. DeGress, 72 Tex. 242, 11 S.W. 1029 (1888).

It is common knowledge in this State that numerous water districts have erected dams and created reservoirs to store, control, preserve and develop the waters for recreational uses along with other uses, and no question has been raised in our appellate courts of their constitutional authority to do so during the past forty-seven years since the Constitutional Amendment was adopted in this State. A recreational lake is a reasonable form of conserving, developing, storing and preserving public waters.

Separate and aside from the benefits to the public to be derived from the use of recreational waters as such, the proposed structure will constitute a form of controlling flood waters, (the common enemy), and is a form of preservation of public waters, for otherwise such waters would quickly waste into the gulf and be lost to other and higher statutory beneficial uses of water.  Thus, in a very real sense, the proposed structure would aid in "the conservation and development of all of the natural resources of this State, including the control, storing, preservation, and distribution of its storm and flood waters, the waters of its rivers and streams. . . .", for the phrase "all other useful purposes" follows the quoted language of Article XVI, Section 59, of the Texas Constitution.

Where a general power is conferred, every particular power necessary for the exercise of same is also conferred, whether expressly granted or not.  By its very nature, a constitution cannot "enter into a minute specification of all the minor powers naturally and obviously included in it and flowing from the great and important ones which are expressly granted."  1 Cooley on Constitutional Limitations (8th Ed. 1927) 138.

In construing the Texas Constitution, it is necessary to keep in mind that a liberal construction, particularly to remedial portions or amendment, is to be indulged to carry out its purposes.  12 Tex.Jur. 2d 364, Sec. 16, Constitutional Law; also Sec. 14, p. 363 observing, "If necessary the language of the constitution is to be given a broad and liberal meaning in order to effectuate the purpose of the provision of which it is a part."  Brown County Water Imp. Dist v. Austin Mill & Grain Co., 135 Tex. 140, 138 S.W.2d 523 (1940).

In this State where water shortage has often been acute, it would be an unreasonable, impractical construction of the

Constitution, contrary to its purposes and public policy mandate, to confine and restrict its language to narrow water development programs. There can be no doubt that the power to erect a dam and create a reservoir for water conservation purposes includes by fair and necessary implication the recreational purposes and uses. These are beneficial or conservation uses and, are given legislative recognition as such in the statutes of this State.

Your first question is whether the statute creating Attoyac Bayou Watershed Authority (Article 8280-220, V.C.S.), enacted expressly pursuant to Sec. 59 of Article XVI of the Texas Constitution (as expressed in the caption of the Act, as well as in Section 1 of the Act), gives Attoyac Bayou Watershed Authority the right and power to develop a multi-purpose project which includes recreational uses.

Such a water district possesses not only such powers as are expressly granted by statute but "also those necessarily or fairly implied, or incident to the powers expressly granted, or essential to the accomplishment of the declared objects and purposes of the water district." 94 C.J.S. 71, Sec. 243 (5), Waters and cases there cited; Tri-City Fresh Water Supply Dist. No. 2 of Harris Co., v. Mann, 135 Tex. 280, 142 S.W.2d 945, (1940); Harris County Water Control & Improvement Dist. No. 50 v. City of Houston, 357 S.W.2d 789, (Civ.App., 1962, error ref. n.r.e.). See also Parker v. San Jacinto Water Control and Imp. Dist., 154 Tex. 15, 273 S.W.2d 586 (1954).

In Lower Nueces River Water Supply District v. Cartwright, 274 S.W.2d 199, 207, (Civ.App., 1954) the San Antonio Court of Civil Appeals, speaking through Justice Norvell, held that,

> ". . . in determining the corporate powers of such districts, it is necessary to examine in some detail the legislative act and the constitutional basis upon which it rests. Water control and improvement districts and river authorities are creatures of statutes, and, although insofar as the general scope of government operations are concerned, they could be classified as 'low down in the scale or grade of corporate existence,' yet within their proper sphere or operation they may be powerful instrumentalities exercising broad and important governmental authority. . ." (Emphasis added)

In holding that the Lower Nueces River Water Supply
District (created by Art. 8280-134) had the power to con-
struct a dam and reservoir for the permissible uses
authorized by the water control and improvement district,
referred to and adopted by the creating Act, and to con-
demn lands within or without the district, even though
such power might conflict with the authority and jurisdic-
tion conferred upon some other agency or district, the San
Antonio Court of Civil Appeals found said authority in that
section of the Act which adopted the governing powers and
authority applicable to water control and improvement dis-
tricts.  Like Art. 8280-220 creating the Attoyac Bayou
Authority, Art. 8280-134 creating Lower Nueces River Water
Supply District reads virtually identical to that Act in
this respect, and the Court's analysis and construction
will be hereinafter quoted because peculiarly pertinent
and applicable to the same construction which must be given
to Art. 8280-220, wherein in its Section 13 it likewise
"adopted by reference as though set out at length herein"
all of "the general laws pertaining to water control and
improvement districts".  In Sec. 1 of that Article, the
Attoyac Authority was given "the power to exercise the
rights, privileges and functions hereinafter specified
and the creation of this Authority is hereby declared to
be essential to  the accomplishment of the purposes set
forth in Article XVI, Sec. 59, of the Constitution of Texas."

Section 3 commands the Attoyac Authority to conduct sur-
veys and develop a plan for control and use of its waters
"to the end that improvements" will be made and related to
the entire watershed.  Section 4 vests the authority "with
the power to control, store, preserve and distribute the
water and floodwaters. . . for conservation, preservation,
reclamation, and drainage of the lands within the authority,
and is empowered to carry out flood prevention measures. . .
to provide the facilities authorized to be constructed under
the provisions of this Act."

Section 5 reads:  "In exercising the power for which
the authority is created, it shall have all of the authority
conferred by general law upon water control and improvement
districts, including but not limited to, the power to con-
struct, acquire, improve, maintain and repair dams or other
structures and the acquisition of land, easements, properties,
or equipment which may be needed to utilize, control, and
distribute any waters that may be impounded, diverted, or
controlled by the authority."

It must be here observed that the subsequent Section 13 of the Act further adopts by reference all of the general laws pertaining to water control and improvement districts "except as modified or supplemented by the provisions of this Act." Section 13 must necessarily be construed in harmony with the powers conferred by Sections 1, 2, 3, 4, 5, and 5A, which are not obviously intended to be exclusive. These are not in anyway inconsistent therewith but are expressly said to be in Section 13 "supplemented by the provisions of this Act." These powers in the Section 13 provision are cumulative to the other powers set forth in Art. 8280-220, and any conflict which could reasonably exist would have to be found by way of express limitation within the terms of the Statute under the well settled canons of construction applicable thereto. The powers enumerated in Section 4 of the Act are thus not expressly or by necessary implication exclusive but the powers in Sections 1, 2, 3, 5, 5A and 13 are cumulative or "supplementary." The powers in Section 4 are as general and broad as can be conceivably made "to control, store, preserve and distribute the water. . . for conservation, preservation, reclamation, and drainage. . . ."

These powers do not even purport to set out what specific and legally recognized uses or purposes of the water are contemplated; that is, irrigation, mining, milling, manufacturing, power, stock-raising, town water works, public parks, game preserves, recreational, domestic, etc., as statutorily recognized in the general laws, Arts. 7470, 7471, 7880-4a, etc. It thus appears that the legislature was not attempting to specify in the statute any specific purpose or use or limit the powers conferred to any specific purposes or uses.

Article 8280-220, involving a grant of authority for public advantages and purposes, pursuant to the mandate and public policy declared by the remedial Constitutional Amendment, Sec. 59, Art. 16 of the Texas Constitution, must be construed liberally and reasonably, disregarding technical distinctions, and giving the Act the most comprehensive application of which it is susceptible to effectuate the legislative objects, purpose and intent. Imperial Irr. Co. v. Jayne, 104 Tex. 395, 138 S.W. 575, 581 (1911); 53 Tex. Jur. 2d 309, Sec. 203, Statutes.

The proper construction of the powers of the Attoyac Bayou Watershed Authority is that adopted in Lower Nueces River Water Supply Dist. v. Cartwright, supra, where a similar incorporation of other statutes by reference was

before the courts. Sections 2, 5 & 9, of Art. 8280-134, V.C.S. incorporated by reference the general laws pertaining to water control improvement districts created under Authority of Section 59, Art. XVI of the Constitution and the court held as follows:

"The general laws of the State applicable to water control and improvement districts and referred to in Section 2 of the 1949 Acts above quoted, are designated as Articles 7880-1 to 7880-153, inclusive, of Vernon's Ann. Tex. Stats. The basic Act was passed by the 39th Legislature, Acts. 1925, p. 86, ch. 25, and numerous amendments thereto have been adopted.

"Among the purposes for which such districts may be organized is that specifically stated in Subdivision (a) of Section 59 of Article 16, Constitution of Texas, namely 'the control, storing, preservation and distribution of its (the State's) storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, . . .' Article 7880-3. To these districts are delegated 'such functions, powers, authority, rights and duties as may permit the accomplishments of the purposes for which such districts may be created, including the investigation, and in case a plan for improvements is adopted, then, the construction, maintenance, and operation of all necessary improvement, plants, works and facilities, the acquisition of water rights and all other properties, lands, tenements, easements, and all other rights helpful to the purpose of the organization of the district, subject only to the restrictions imposed by the Constitution of the State of Texas or that of the United States: . . .' Article 7880-7.

"A water control and improvement district is further empowered 'to construct all plants, works and improvements necessary to the purpose for which it is organized and incident thereto. . . (They) may construct all works and improvements necessary for the prevention of the floods, the irrigation of land in such districts, for drainage of lands and construction of levees to protect same from overflow, to alter land elevations where correction is needed, and to supply water for municipal uses, domestic uses,

power and commercial purposes, and all other
beneficial uses or controls.' Article 7880-48.

"It is further provided that, 'the direc-
tors, employees and engineers of a district
shall have authority to go upon any lands for
the purpose of making surveys for reservoirs,
canals, rights of way, dams or other contem-
plated improvements and to attend to any business
of the district whether such lands are situated
in the district or outside of such district.'
Article 7880-49.

"Articles 7880-125 and 7880-126 relate to
the property of a water control and improve-
ment district and its powers of eminent domain.
Among other means, such districts are authorized
to acquire under the power of eminent domain,
'all lands, materials, borrow and waste grounds,
easements, rights of way and everything deemed
necessary, incident or helpful for the purpose
of accomplishing any one or more of the objects
authorized for water control and improvement
districts, which shall be held to mean the
accomplishment of said objects by any practica-
ble mechanical means: . . .' A detailed pro-
cedure is likewise provided for the taking of
lands 'either within or without the District,'
under the power of eminent domain." (Emphasis
added)

In addition to the above statutes referred to by the
court, Art. 7880-4a, is a statute which was also pertinently
adopted by Sec. 13 of Art. 8280-220, and authorizes our water
district to award the use of waters for the following uses:
domestic and municipal use, industrial use . . .; irrigation;
development of hydro-electric power; pleasure and recreation.

It is well settled that recreation as a use in Art.
7880-4a, V.C.S. must be read into Art. 8280-220 and given
effect, either as a statute adopted by reference (53 Tex.Jur.
2d 278, Sec. 185, Statutes), and many cases cited or as "in
pari materia". 53 Tex.Jur. 280, Sec. 186, Statutes, and
many cases cited.

Likewise, the constitutional provisions and powers
(such as Sec. 59, Art. XVI) must be interpreted and read
into a statute (such as Art. 8280-220), in the light of the

constitutional purposes, "both express and implied."
Clark v. Briscoe Irrigation Co., 200 S.W.2d 674, (Civ.
App. 1947); Brazos River Conservation & Reclamation
Dist. v. Costello, 135 Tex. 307, 143 S.W.2d 577 (1940).

In Corzelius v. Railroad Commission, 182 S.W.2d
412, 415 (Civ.App. 1944) the applicable rule of con-
struction of fair implications from the conservation
laws of this state was clearly and forcefully stated as
follows:

> "It is equally well settled, however,
> that when a statute imposes a mandatory duty
> upon a governmental agency to carry out the
> express and specifically defined purposes and
> objectives stated in the law, such statute
> carries with it by necessary implication the
> authority to do whatever is reasonably
> necessary to effectuate  the legislative
> mandate and purpose.  39 Tex.Jur. Sec. 99,
> p. 186; 50 Am.Jur. Sec. 428, p. 449."

Art. 8280-220 must be so construed in the above light
as granting to the Attoyac Bayou Watershed Authority the
power to develop a multi-purpose structure which includes
recreational uses recognized as being included within the
purposes or needs of "conservation, preservation, recla-
mation, and drainage," the statutory purposes or uses
expressly adopted by reference as a part of the general
laws pertaining to water control and improvement districts,
and the constitutional purposes or uses in Sec. 59a of
Art. 16 which comprehend "all . . . useful purposes."

Section 8 of Art. 8280-220, V.C.S. of Texas, grants
the express power "to cooperate with any agency, represen-
tative or instrumentality or department of the Federal
government . . . for the purpose of acquiring the funds
necessary to furnish land easements or permanent improve-
ments thereon. . . ."  This provision gives the Attoyac
Authority the power to acquire funds from or share costs
with the Federal government for the construction of a
multi-purpose dam, to include recreational or other statu-
tory recognized conservation purposes, as expressly author-
ized by Public Law 566, 83rd Congress, as amended.

In projects involving recreational purposes, Public
Law 566 authorizes the Secretary of Agriculture to finance
not to exceed one-half of the cost of land, easements, or

rights of way and minimum basic facilities needed for public health and safety, access to, and use of such reservoir or the area for such purposes whenever the need therefor is demonstrated. However, the local district apparently is required to acquire or condemn the land necessary for such projects.

Sections 5 and 5A of Art. 8280-220 and Art. 7880-126 confers upon the authority the powers of eminent domain and relocation in carrying out any of the powers granted the Authority.

The power of eminent domain depends upon the express language of the statutory authority.

Having concluded that beneficial and useful purposes of flood control and water conservation include recreational uses, we believe that land to be inundated by such a water conservation project is within the purview of "property . . . needed for, or incident to, or helpful for, accomplishing the object of the District, and to effect the economical operation thereof . . . ." Art. 7880-126; See Monterey County Flood Control - W. Con. Dist. v. Hughes, supra; Brazos River C. - Reclamation Dist. v. Harmon, 178 S.W.2d 281 (Civ.App. 1944, error ref., w.o.m.); 29-A C.J.S. 311, Eminent Domain, Sec. 64(3).

As to lands lying above the contour line of the water level of the reservoir, the power to condemn is strictly construed and limited to the amount of property reasonably necessary and convenient for the "public use" authorized, as distinguished from "private" uses for individuals, and as illustrated in the above cited authorities. Public access, safety, protection or purity of water and sanitation would appear to be valid considerations in view of the authority's power, expressed, for example, in Art. 7880-7.

The final question presented is whether the Attoyac Bayou Authority may use funds received from taxes to finance and maintain the recreational development. By the express terms of Section 59c, Art. XVI of the Texas Constitution, . . . which must be read into Art. 8280-220 in the light of the constitutionally expressed purposes, uses and objectives, as heretofore shown, it is provided that, "the Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this Amendment, and all such

indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as may be prescribed by law and shall also authorize the levy and collection within such districts of all taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds . . . ."

Pursuant to the above, the Legislature provided by Art. 8280-220, Sec. 5, that the Attoyac Bayou Authority is vested with all of the authority conferred by general law upon water control and improvement districts, including the acquisition of land, easements, properties, or equipment which may be needed to utilize, control and distribute any water that may be impounded, diverted or controlled by the Authority. Section 8 of the statute provides that the Authority may levy a maintenance tax, if approved by vote of qualified voters within the authority, for the purpose of maintaining works of improvements constructed in cooperation with the Federal government. Section 12 provides that "all bonds issued by the authority . . . shall be issued in the same manner and with the same consideration and provision as under the general law governing water control and improvement districts." See Art. 7880-9 and other related articles for bond powers.

Since the general law governing water control improvement districts contains all items required by the levying of a valid tax to support bonds issued for authorized construction projects, there is no room for doubt that Attoyac Bayou Authority would be authorized to levy the necessary taxes to support its share of the said multi-purpose project to the same full extent as any of the other water control improvement districts in this state.

It appears that the Texas Soil Commission is authorized only to "approve or disapprove of projects designed to effectuate watershed protection and flood prevention programs . . . ." Sec. 6, Art. 7472e, V.C.S. Since the proposed project goes beyond such purposes, approval of the Texas Water Commission is required; and a permit must be obtained before commencing the project. Art. 7492, V.C.S. of Texas.

## S U M M A R Y

The Attoyac Bayou Watershed Authority, expressly created pursuant to Sec. 59, Art. XVI of the Texas Constitution, and by Art. 8280-220, V.C.S., has the legal authority to develop a multi-purpose reservoir which includes recreational use as a purpose and may use funds received from taxes to finance and maintain the same.

Very truly yours,

WAGGONER CARR
Attorney General of Texas

By: Kerns B. Taylor
Assistant

KBT:rm

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
J. S. Bracewell
Robert Owen
Frank Booth
Larry Craddock

APPROVED FOR THE ATTORNEY GENERAL

By: Stanton Stone