CITY OF HOUSTON, Appellant,

v.

Dan M. MOODY et al., Appellees.

No. 17115.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 8, 1978.

Rehearing Denied Sept. 21, 1978.

Robert M. Collie, Jr., City Atty., James L. Dougherty, Jr., Asst. City. Atty., Houston, for appellant.

Wood, Campbell, Moody & Gibbs, Robin C. Gibbs, Debora D. Ratliff, Houston, for appellees.

PEDEN, Justice.

The City of Houston appeals from a judgment rendered in favor of Dan M. Moody, Jere M. Locke, Howard Tellepsen, First City National Bank as trustee for Kathryn Locke and the John Locke Master Trust, and Lakewood Heights Corporations of Houston No. 1 and No. 2 for debts incurred by Harris County Water Control and Improvement District No. 73 before it was annexed by the City late in 1972. The trial court found that the District was legally and equitably bound to repay the indebtedness and that the City succeeded to this liability upon annexation. The City argues on appeal that the promissory notes evidencing the debts should not have been admitted into evidence because authority for their execution was not shown, that appellees did not prove compliance with Article 7880–32a, Vernon's Texas Civil Statutes (now § 51.371–§ 51.375 of the Texas Water Code), that appellees neither pleaded nor proved that the incurring of the debt was approved by the voters and supported by a tax levy as required by Article XVI, § 59(c) of the Texas Constitution, that the debt was barred by limitations, that there was no evidence that money was advanced, and that no equitable remedies should be allowed because it is impossible to restore the status quo. Appellees' only crosspoint is that the court erred in denying their plea for attorney's fees as provided in the notes. We affirm the trial court's judgment.

Appellees brought this suit to recover debts originally incurred by the District between 1963 and 1968. The individual plaintiffs were investors in the plaintiff companies that were formed to develop Lakewood Heights addition, and they owned a waterworks that served it. The District was formed to provide a sewer system, and the voters in the District approved the issuance of $1,000,000 of the District's bonds for that purpose. In 1959, before selling any of these bonds, the District entered into a written agreement with Dan M. Moody that Moody or his associates would, from time to time, advance such funds as were necessary to supplement the District's incomes so that it could meet its operating expenses and obligations under its order to issue the bonds. The District agreed that at the time of each advance its board would give Moody notes evidencing the advances and would declare existing emergencies as provided by Article 7880–32a, V.T.C.S. Repayment would be made when extra funds became available from regular operations. The District's board authorized execution of the contract.

Ten renewal notes were admitted into evidence, each payable to one of the plaintiffs and dated either September 9, 1970 or May 1, 1971. Mr. Moody was unable to locate one renewal note, but an affidavit stating its terms was admitted in evidence. Also admitted was a copy of the minutes of the July 12, 1967 board of directors meeting reciting that the District had previously borrowed money from the appellees and that the notes and accrued interest were past due. The board voted to ratify one note executed on September 26, 1966 and to renew the others effective July 1, 1967. The District disbursed pro rata to the plaintiffs only $1500 of the debt.

Plaintiffs' trial pleading sought relief based on the notes themselves or, in the alternative, on subsequent adoption and ratification, estoppel, or implied contract. The trial court, sitting without a jury, found for the plaintiffs on all of the theories they advanced.

The City contends in its first point of error that the promissory notes should not have been admitted into evidence because there was no showing that the District's board of directors authorized Mr. Binnion, its president, to sign the notes. He signed them "Harris County Water Control and Improvement District No. 73 by Roger L. Binnion, President." The City does not deny that Mr. Binnion was the president and, therefore, an agent of the District.

We overrule this point. "The law presumes that officers of municipal corpo-

rations act within the limits of their authority; that they act in good faith; and that they act in the best interests of the municipality they represent." *Kimbrough v. Walling,* 371 S.W.2d 691, 692 (Tex.1963). This presumption has been applied to actions of county commissioners' courts. *Bexar County v. Hatley,* 136 Tex. 354, 150 S.W.2d 980, 987 (1941); *Rains v. Mercantile National Bank,* 144 Tex. 466, 191 S.W.2d 850, 852 (1946). Improvement districts are political subdivisions of the state, "performing governmental functions, and standing upon the same footing as counties and other political subdivisions established by law." *Willacy County Water Control and Improvement Dist. No. 1 v. Abendroth,* 142 Tex. 320, 177 S.W.2d 936, 937 (1944). The presumption that public officers have performed their duties in a regular and lawful manner places on the opposing party the burden of producing evidence to the contrary. 1 McCormick & Ray, Texas Law of Evidence, 118, § 94 (1956). Appellant presented no evidence to prove the president's lack of authority to sign the notes for the District.

Even if the appellees had the burden of showing evidence of Mr. Binnion's authority, it "may be established by either direct testimony or by circumstances, such as the relation of the parties and their conduct concerning the transaction in controversy." *Johnson v. Texas Gulf Coast Corp.,* 359 S.W.2d 91, 94 (Tex.Civ.App.1962, no writ). The 1959 contract, the minutes of the July 12, 1967 board meeting, and the testimony of Mr. Moody concerning prior transactions, and continued reference to the debts in the audits and financial statements of the District are all evidence of Mr. Binnion's authority to bind the District.

■ Points 2 and 3 allege error in the trial court's conclusion that the borrowing was in compliance with Article 7880–32a, V.T.C.S., because there was no evidence that the board declared an existing emergency and the one-year term of the notes exceeded the maximum term authorized by the statute. In the absence of evidence to the contrary, the court will presume that a public official performed his duty according to the law, and the burden is on appellant to affirmatively show a lack of compliance. See *Fausett v. King,* 470 S.W.2d 770, 773 (Tex.Civ.App.1971, no writ); *White v. Calaway,* 282 S.W. 642, 643 (Tex.Civ.App.1926, writ ref'd). Appellant failed to prove that the board did not declare an existing emergency. Even without the presumption, there is some evidence that the board declared an emergency existed prior to the borrowings. The 1959 contract stated that the District would borrow when an emergency arose and referred to Article 7880–32a. Mr. Moody testified that when money was loaned the president of the District and its attorney would say that it had a real emergency and that it needed the funds.

■ Appellant argues that Article 7880–32a required that the borrowing be limited to 6 months or not beyond the following April 1. That statute clearly applied such maturity dates only to debts secured by a pledge of taxes levied or a pledge of preliminary or construction bonds. The directors in the instant action did not choose to secure the loans, so the time limitations are inapplicable.

Appellant's points 4, 5 and 6 assert that the court erred in enforcing an indebtedness that was neither approved by the voters nor supported by a tax levy as required by Article XVI, § 59(c) of the Texas Constitution. That subsection, however, applies to indebtedness of the District that is serviced by a tax. "Bonds payable only out of revenues, and that can never become a charge otherwise against the district, do not constitute an indebtedness within the meaning of Subsection (c)." *Lower Colorado River Authority v. McCraw,* 125 Tex. 268, 83 S.W.2d 629, 633 (1935).

"The objection that the proposed bonds had not been authorized by a vote of the taxpaying voters of the district is untenable. The bonds are not payable out of money to be raised by taxation levied by the district itself as a governmental agency. As we held in the *Lower Colorado River Authority* case, a vote of the qualified property taxpaying voters of this

district is not necessary to the validity of these bonds. These bonds can never be serviced by a tax on the properties of the district as such. They, therefore, do not constitute indebtedness within the meaning of subdivision (c), section 59, of article 16 of our Constitution. In other words, these bonds can never become a claim against any tax funds of this district." *Brazos River Conservation and Reclamation District v. McCraw*, 126 Tex. 506, 91 S.W.2d 665, 672 (1936).

Accord, *Texas National Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 635 (1939); cf. *Brown County Water Improvement Dist. No. 1 v. Austin Mill & Grain Co.*, 135 Tex. 140, 138 S.W.2d 523, 525 (1940). The 1959 contract between Moody and the District provides only that the lender will be reimbursed "when and as the District accumulates funds not needed for operating expenses and not needed to meet the debt service requirements of the bond order, and such reimbursement shall not be due until such extra funds are available."

Under Article 7880–32a, directors of water control and improvement districts were given the option of borrowing funds for an emergency with or without security. If secured, the legislature required short repayment periods. The debt in question was unsecured and does not come under the tax levy and vote requirements of Article XVI, § 59(c).

In *Nueces County Fresh Water Supply Dist. No. 1 v. Texas State Bank & Trust Co.*, 67 S.W.2d 427, 428 (Tex.Civ.App.1933, writ dism.), the water district executed a note to pay off a pressing debt and to supply a deficiency in the sinking fund, then defended on the ground that the debt had not been voted on by the people of the district. The San Antonio Court of Civil Appeals held that the note was not given to create a new debt; it was merely evidence of a debt already due that the supervisors were striving to meet.

Appellant's points 7 and 8 assert that appellees' alternative claims based on equitable theories of estoppel, ratification, implied contract, unjust enrichment and restitution are barred by Article 5526, V.T.C.S., as actions where the indebtedness is not evidenced by a contract in writing. The debt in the case at bar is evidenced by the written renewal notes issued on September 9, 1970 and May 1, 1971, and due one year from those dates. The suit was filed on May 3, 1974. A written acknowledgment of a previous debt supports an action on a promise to pay. Article 5539, V.T.C.S. Such acknowledgment is independent of, but made in consideration for, the previous debt. This new promise is governed by the four-year statute of limitations. *Siegel v. McGavock Drilling Co.*, 530 S.W.2d 894, 896 (Tex.Civ.App.1975, writ ref. n. r. e.); *Payne v. Miller*, 229 S.W.2d 857 (Tex.Civ.App.1950, writ ref.). The trial court's judgment in favor of the plaintiffs was founded on legal as well as equitable bases.

Appellants' ninth point of error is that there was no evidence to support the trial court's finding that certain sums of money were advanced to the District. Mr. Moody testified that the series of notes and dates appearing on page 2 of the plaintiffs' second amended petition was a list of the original notes that were executed over the period of time during which the original advances were made and that they were the various advances made by the plaintiff stockholders of the two Lakewood Heights corporations and by the corporations. Appellees then offered their second amended petition into evidence. Copies of the notes were attached as exhibits, and the trial judge overruled the City's objection.

Even if the evidence on the amounts originally advanced had been legally insufficient to support the finding, the trial court's findings on the renewal notes will support the judgment. Having determined that the renewal notes represented the original debt plus interest, the trial court could grant both legal and equitable relief sought by the plaintiffs.

Appellant's final point contests the court's finding that the City has an equitable obligation to make restitution to appel-

lees because it is now impossible to restore the status quo. Appellant cites *Coon v. Schoeneman*, 476 S.W.2d 439, 441 (Tex.Civ. App.1972, writ ref., n. r. e.) for the rule on restitution:

"Restitution is the amount which would put plaintiff in as good a position as he would have been in if no contract had been made. It restores to plaintiff the value of what he parted with in performing the contract."

If appellant makes restitution for the amount owed to the plaintiffs on the debt, the plaintiffs will be restored to the positions they were in before they made the loans.

Appellees' only cross-point of error is that the trial court erred in denying them a 10% attorney's fee upon default as provided in the promissory notes. Directors of a water district cannot bind the district to pay an attorney's fee provided in a note; that would constitute an increase in the original obligation. *Western Metal Mfg. Co. v. Cameron County Water Improvement Dist. No. 8*, 105 S.W.2d 700, 705 (Tex.Civ. App.1937, writ dism.).

The judgment of the trial court is affirmed.